ALBERT SCHIFF and LEWIS STEIGERWALD, trading as A. SCHIFF & CO. *vs.* SOLOMON B. SOLOMON, JUDAH H. SOLOMON and SIMEON B. SOLOMON, Co-partners, and GEORGE REUBEL.

*Involuntary Insolvency—Sections of Act of 1880, ch. 172, relating to Involuntary Insolvency—Error to Join two or more Debtors in one Petition—Two or more persons not to be adjudicated Insolvents under same Petition—Want of Jurisdiction—What Proceedings may be Consolidated by the Court—Petition in Involuntary Insolvency may be filed by Creditor whose Debt is not due—How far Specific Statements of Alleged Acts of Insolvency are Required in the Petition.*

The sections of the Act of 1880, ch. 172, relating to involuntary insolvency, make no provision for partnerships as such, but contemplate proceedings only against the debtor in person.

Creditors filed a petition under said sections against A. S. and L. S., describing them as " co-partners, heretofore trading under the firm name and style of A. S. & Co.," and alleging that they, and each of them, had within sixty days before the filing thereof committed acts of insolvency. Upon this petition the Court below passed an order by which it " adjudged that A. S. is an insolvent debtor, and that L. S. is an insolvent debtor within the meaning of the Act of Assembly." On appeal, it was HELD :

1st. That joining both debtors in one petition was a fatal error.

2nd. That under said sections there is no jurisdiction to adjudicate two or more persons insolvents under the same petition, whether

acts of insolvency are therein alleged to have been committed by them severally as individuals, or jointly as members of a firm, or both severally and jointly.

3rd. That the want of jurisdiction in such a case is apparent, and this Court will itself take notice thereof, on an appeal from such an adjudication, notwithstanding that the point is not raised by the language of the answers or exceptions of the defendants.

4th. That there is no impropriety in the Court's consolidating proceedings under two or more petitions filed by different creditors against the same debtor, *provided* the alleged acts of insolvency are the same, the same issues of fact are applicable, and the parties are not prejudiced by such a procedure.

5th. That it is not necessary that the debts of the petitioning creditors should be actually due before the filing of their petition; as the relation of creditor is established as soon as the obligation is contracted.

6th. That the debtor is entitled to as specific a statement of the acts, by which it is asserted he has exposed himself to the summary proceedings and severe consequences of the insolvent law, as their nature will reasonably admit of. It is not necessary that the allegations be made with great minuteness of detail, or that the petitioner must establish every circumstance embraced in his averments; but the allegations should be sufficiently pointed to describe with substantial identification the material facts which justify the characterization of the act complained of as an act of insolvency, in order that the defendant, the Court and the jury, may be informed in substance of the subject-matter of the accusation and injury.

Appeal from the Court of Common Pleas.

B. L. Solomon's Sons on the 29th December, 1881, filed a petition setting forth that they were creditors of Albert Schiff and Lewis Steigerwald, who were co-partners theretofore, trading under the firm name and style of A. Schiff & Co., to the amount of $930.21, being the price of merchandise sold them at various dates, between November 1st and December 9th, 1881, upon sixty days' credit, and alleging that said Schiff and Steigerwald, co-partners, as

aforesaid, and each of them had within sixty days prior to the filing of said petition, committed the following acts of insolvency:

1. That they, and each of them, had concealed and removed certain of their property, to prevent the same being taken under legal process.

2. That they, and each of them, had made gifts, sales and conveyances and transfers of parts of their property, with intent to delay, hinder, and defraud their and each of their creditors.

3. That being merchants and traders, they and each of them, had when insolvent or in contemplation of insolvency, created liens making unlawful preferences within section 13 of Article 48 of the Maryland Code, as amended by the Act of 1880, ch. 172.

4. That being merchants and traders, they and each of them had, when insolvent, and in contemplation of insolvency, otherwise given unlawful preferences within said section of the Code.

5. That being merchants and traders, they and each of them, had when insolvent, or in contemplation of insolvency, combined and colluded with one Benjamin Weil, a brother-in-law of said Schiff, who claimed to be a creditor of said firm of A. Schiff & Co., to sue out of the Superior Court of Baltimore City, on December 17th, 1880, an attachment on original process in the name of said Weil, against the said Schiff and Steigerwald, and caused the same to be levied upon the stock in trade of said A. Schiff & Co., with the intent to give the said Weil, an unlawful preference over the other creditors of said firm, and to prevent said property from being taken under legal process, and also to delay, hinder and defraud their said other creditors.

The petition further alleged, that a considerable portion of the property so concealed, removed, conveyed or otherwise transferred, as above stated, was then in the

custody of Messrs. Taylor & Creamer, William B. Norman and William R. Lincoln, and prayed that said Schiff and Steigerwald, and each of them be adjudicated insolvents; that the said Taylor & Creamer, Wm. B. Norman and Wm. R. Lincoln, be restrained, by order of the Court, from in any manner disposing of any property in their possession belonging to said Schiff and Steigerwald, or either of them, and that said Weil be restrained from proceeding any further under the said attachment pending the determination of the application under said petition.

On January 7th, 1881, said Schiff and Steigerwald, filed a joint answer to said petition, denying each and all of the several allegations therein, and also averring that said allegations were not sufficiently full, precise and distinct to sustain the proceedings instituted against them. Afterwards on January 28th, 1881, George Reubel, another creditor of said Schiff and Steigerwald, to whom they were indebted upon a promissory note for $275.50, dated December 7th, 1880, and payable one month after date, filed another petition against them, making identically the same allegations in form and substance, as those contained in the petition of B. L. Solomon's Sons, with the addition of a sixth allegation, which charged the said Steigerwald with having made in fraud of his creditors a conveyance of his interest in his deceased father's estate, by a deed executed January 15th, 1881. Upon this petition the Court, on February 3rd, 1881, *sua sponte* passed an order directing it to be consolidated with the said petition of B. L. Solomon's Sons, unless cause to the contrary should be shown before February 12th; and no objection was made by any of the parties thereto.

On March 26th, the defendants Schiff and Steigerwald, filed a joint answer to the petition of Reubel, identical with that made to the former petition, with the addition that the respondent Steigerwald admitted the execution of the deed of January 15th, 1881, therein referred to, but

denied it was executed when he was either insolvent, or in contemplation of insolvency, or for the purpose of delaying, hindering or defrauding his creditors.

A jury trial having been prayed by the defendants, the case was tried upon issues framed by the parties which presented the question as to whether the said Schiff and Steigerwald, or either of them, had done any of the several acts which were alleged in said petitions, as matters of fact. The matters of fact averred in each allegation, were embraced in a separate issue, in which substantially the same language was used as that employed in the petitions. The jury found a verdict of "They did," upon each of the several allegations submitted to it, and the Court subsequently passed an order whereby it "adjudged that said Albert Schiff, is an insolvent debtor, and that said Lewis Steigerwald, is an insolvent debtor, within the meaning of the Act of Assembly in such case, made and provided," and appointed Richard M. Venable, preliminary trustee of both said insolvents. From this order, the defendants appealed.

The cause was argued before BARTOL, C. J., ROBINSON, IRVING and RITCHIE, J.

*O. F. Bump*, for the appellant.

None of the allegations of insolvency, excepting the fifth and the sixth, in the petition of George Reubel, give any detail or specification of facts, but are mere formal allegations in the language of the statute. But the Act of 1880, ch. 172, sec. 24, p. 269, expressly requires that "the petition shall allege the facts upon which the allegation is grounded."

The petitioning creditors observing that the statute had not provided for partnerships, endeavored to bring the case within the Act, that "they, and each of them," committed the act of insolvency, thus making the proceeding

joint and several. This is erroneous. The proceeding should be either joint or several. There is no provision for a proceeding against a partnership.

The Act only provides for the filing of a petition by "creditors" who have debts. A creditor is a person who has the right to require the fulfilment of an obligation or contract. 1 *Bouvier's Law Dic.*, 409. A debt is a sum of money due by contract. 1 *Bouvier's Law Dic.*, 436; 1 *Burrill's Law Dic.*, 450; *U. S. vs. Colt*, 1 *Pet. C. C.*, 145; *Andrew vs. Murray*, 9 *Abb. Pr.*, 8; *Weston vs. Syracuse*, 17 *N. Y.*, 110.

*Joseph Packard, Jr.*, and *Wm. Reynolds*, for the appellees.

The only objections made at the trial to the sufficiency of the allegations of acts of insolvency in the petitions filed were, 1st, that they were made against the defendants, and each of them; and 2nd, that all, excepting the fifth and sixth, were vague and indefinite.

In regard to the first objection it may be answered, that under the insolvent law of Maryland, there is no provision for declaring a firm, *as such*, insolvent, and, consequently, it could be no more capable of committing an act of insolvency, *as a firm*, than it could be of committing a crime; although, in the one case as in the other, all the partners, collectively, might participate in the commission of a joint act, for which each one would be held individually liable as his own separate act. A firm cannot be declared insolvent in Maryland, for the reason that in this State the fact of the insolvency of one member dissolves the partnership quite as effectually as does his death. *Williamson vs. Wilson*, 1 *Bland*, 424. Hence, a person can only be adjudicated an insolvent debtor in his individual capacity, on account of his own personal acts; consequently, all acts of insolvency alleged against him should be charged as such, notwithstanding that

37                       v. 57.

they may have been committed through others as his agents, and the proof of such agency may rest wholly in the fact that they were his partners in business. No special rules of pleading and practice having been laid down in the Act of 1880, for proceedings in involuntary insolvency, the method of procedure in such cases must be regulated by the sound discretion of the Courts, which would properly conform it as nearly as practicable to that adopted in other cases within their ordinary common law jurisdiction. Therefore, just as when several persons have united in committing the same tort or have participated in the same crime, they may all, for convenience, be joined in the same action or indictment, (1 *Chitty's Crim. Law*, 270,) although each one can only be held liable for his own individual act; so also when the same creditor petitions to have several persons adjudicated insolvents, all of whom are members of the same firm, and must therefore have participated more or less in the acts charged against each of them severally, it becomes equally proper that he should include all the several applications in a single petition, so that the cases may be tried together, and the same trustee be appointed for all the insolvent partners.

The second objection, that all the allegations other than the fifth and sixth are too vague and indefinite, is of no practical importance in this case, as a verdict of the jury upon the fifth allegation, which is certainly sufficiently explicit, was sufficient of itself to warrant the order of adjudication. It is submitted, however, that the allegations objected to are quite as specific and detailed as those employed as the foundation for suits at law upon the six common counts, or even as those made in the affidavits required for suing out attachments upon original process. There is no reason why greater strictness should be required in cases of this class, where although the existence of the frauds alleged may be patent from their results, yet it is often impossible to learn the exact particu-

lars of the transactions except from the defendants themselves.

RITCHIE, J., delivered the opinion of the Court.

On the 29th day of December, 1880, Solomon B. Solomon and others, trading as B. L. Solomon's Sons, filed their petition against the appellants, as co-partners, under the firm name of A. Schiff & Company, to have them adjudicated insolvent under those sections of the Act of 1880, ch. 172, which relate to involuntary insolvency. The indebtedness of A. Schiff & Co. is alleged to be $930.21, the price of goods and merchandise furnished them at various dates from the 1st day of November to the 9th day of December, inclusive, 1880, upon a credit of sixty days. There are five allegations upon which the application is based. The first four of these impute acts of insolvency in general terms only; the fifth is specific, and accuses the respondents, being then insolvent, of having colluded with a certain Benjamin Weil, another of their creditors, to secure him by means of an attachment issued on the 17th day of December, 1880, and laid upon their stock in trade, an unlawful preference over their other creditors.

The answer of respondents admits the indebtedness, but also avers that no portion of the same was due and demandable at the time of the filing of said petition; denies their commission of any of the acts of insolvency generally alleged; denies in detail the specific charge of collusion with Benjamin Weil in his issuing of said attachment, and in concluding, avers that the allegations of the petition "are not sufficiently full, precise and distinct to sustain the proceedings instituted, and that they should not be declared insolvent for any cause in said petition alleged."

On the 28th day of January, 1881, George Reubel, claiming to be a creditor of the firm of A. Schiff & Co.,

on their promissory note for $275.00, payable to his order with interest thirty days thereafter, also filed his petition in the same Court to have the respondents adjudicated insolvents, making identically the five allegations, in form and substance, contained in the first petition, and adding another, which charges one member of the firm, Lewis Steigerwald, with having made, in fraud of his creditors, a conveyance of his interest in his deceased father's estate.

The answer to this petition is similar to the former one, with the addition of a denial on the part of Steigerwald, of any fraud in the execution of the deed aforesaid.

The Court regarding the two petitions as involving substantially the same matter, of its own motion ordered their consolidation ; and one set of issues was submitted to the jury. These issues, like the allegations, were six in number, and, excepting the last two, general in form, no particular facts being set out in any but the fifth, which related to the attachment proceedings by Weil, and the sixth, which referred to the execution of the deed by Steigerwald. The respondents, before the jury was sworn, excepted to the sufficiency of the allegations in both petitions. The objections to the first four being that they were vague and indefinite, to the fifth that the act of insolvency was alleged to have been committed by the defendants and each of them, to the sixth that an alleged individual act of insolvency on the part of Steigerwald could not be joined with allegations of acts of insolvency on the part of the firm, and also that the said act of Steigerwald was committed after the filing of the petition of Solomon and others.

There was some modification of these issues at the instance of the petitioners permitted by the Court, notwithstanding objection made by the respondents. But as finally submitted they retained their indefinite character in not pointing out any specific facts or circumstances as constituting the acts of insolvency except in

Schiff & Co. *vs.* Solomon, *et al.*

those connected with the attachment proceedings. The issues having been found against the respondents, the Court adjudged Albert Schiff and Lewis Steigerwald to be respectively, insolvent debtors within the meaning of the Act of Assembly.

In disposing of this case we do not deem it necessary to consider in detail the prayers that were offered or to set out any more of the record. The recital that we have made is not necessary to the determination of this appeal. We may rest it upon a single point alone, which we shall presently mention; but as the involuntary feature of our insolvent system is of recent introduction, we deem it advisable to express our opinion upon the leading questions which arose upon that portion of the proceedings we have detailed, because likely to be of frequent recurrence.

The first and fatal error in both the petitions, as we apprehend them, is that they are instituted against the respondents as members of a co-partnership. This Court has expressly decided that this cannot be done in a case disposed of at the present term: *Armstrong, Cator & Co. vs. Martin & Marr, p.* 397 *ante.* As this decision was subsequent to the filing of the petitions, the counsel were of course without the benefit of our views in determining their course of procedure.

It is true there were no formal demurrers to the petitions on this ground. But even if it could be successfully contended that the point is not raised by the language of the answers and exceptions of the respondents, as the decision in the case just cited is based on the ground that our insolvent law makes no provision for partnerships as such, but contemplates proceedings only against the debtor in person, an absence of jurisdiction is apparent in a case like the present of which the Court itself will take notice. Nor if, as was contended by appellees' counsel, we could be convinced that the proceedings while referring

to. acts of insolvency in relation to partnership matters, were instituted in fact against the respondents as individuals, still the joinder of two or more debtors in such an application would in our judgment be equally outside the contemplation of the Act of Assembly.

It was suggested that an action of *tort* is analogous; but ending as that does in a simple judgment, where execution for the full sum lies equally against all the defendants, it does not carry with it the complex incidents and consequences of an insolvent proceeding. The latter is purely statutory, implying peculiar methods and their strict observance, and is marked by a procedure of various and successive stages which would be greatly embarrassed by applying it at the same time to two, or more, insolvents (for if two may be joined there is no limit to the number,) whose indebtedness would not be identical, whose creditors would generally, if not always, differ in number and in the amount of their claims, and whose election of trustees would be attended by the confusion incident to their different bases in these respects. A trustee for each debtor would be almost the inevitable result of such an election, if feasible at all. Each debtor's estate, too, being unlike in quantity and nature, would then have to be disposed of and distributed separately by its particular trustee, having separate accounts to render and audit; or the attempt would have to be made to deal with the different properties of the various debtors in gross; a confusing process, if not of doubtful warrant in law. No such complications, we think, are contemplated by the statute. Great inconvenience, to say the least, would result from embracing a number of debtors in a common proceeding; and the whole scope of our insolvent system as found in the statute; its uniform use of the word debtor, and the references in its provisions being all predicated of the singular number, satisfies us that the design was to establish the simpler and more expeditious method of proceed-

ing against each insolvent debtor alone. See *Gable, et al. vs. Scott, et al.,* 56 *Md.,* 176.

But while we think the application must apply but to a single debtor, the Act expressly provides, on the other hand, that "any one or more *creditors,* the aggregate of whose debts against the insolvent amount to at least the sum of two hundred and fifty dollars," may file their petition against the *debtor* who has exposed himself to its provisions. This being so, and not pausing because unnecessary, to apply our observations in the present case, we see no impropriety in the Court's consolidating proceedings under petitions in which the parties were competent to voluntarily unite; provided the alleged acts of insolvency are the same, the same issues of fact are applicable, and the parties are not prejudiced by such a procedure. Such a course would be evidently promotive of dispatch, and the saving and apportionment of costs to those concerned in a common result.

As to the proposition embodied in the respondents' first and second prayers, that the verdict must be for the defendants, because the debts of the petitioning creditors were none of them actually due before the filing of their petitions, we agree with the Court below in not considering it sound. The right to proceed against the debtor arises when the act of insolvency is committed. The door would be opened wide to fraud, and the design of the law to secure the insolvent's property for the injured creditor frustrated, if the latter were compelled to stand helplessly by and see it made away with because the *time of payment* of his claim, placed in the future in all probability upon the faith of this very property, had not fully matured. The relation of creditor is established when the obligation is contracted, and is not suspended till the date fixed for its discharge. *Drake on Attachment, sec.* 556; *Stewart vs. West,* 1 *H. & J.,* 536. But we think this too well settled to need the citation of authorities.

In regard to the objection urged by respondents to some of the allegations and issues, heretofore indicated, that they are vague and indefinite, we think it well taken.

Section 24 of the Act under consideration expressly requires, that "The said petition shall allege the *facts* upon which the application is grounded." The debtor ought not to be stigmatized as an insolvent, and his credit and standing thus put in jeopardy, upon loose or general allegations. It would be a great injustice to put him to his defence upon broad and vague accusations merely. He is entitled to as specific a statement of the acts by which it is asserted he has exposed himself to the summary proceedings and severe consequences of the insolvent law, as their nature will reasonably admit of. The imputation of insolvency or dishonesty, even if afterwards shown to be groundless, is calculated to work injury to any citizen, and especially to members of the mercantile community, whose success largely depends upon their credit being above suspicion. Without the safeguard of requiring the facts to be set forth or indicated which constitute the alleged act of insolvency, the compulsory feature of the statute would prove a dangerous and oppressive weapon in the hands of the rash or malicious. It is an elementary principle, that a defendant should be apprised of the nature of the charge or claim against him. He is thus enabled to prepare for his defence. And unless the issues of the trial are specific, there is no record by which he can be protected against a renewal of the action. It is not meant by these observations, that the allegations must be made with great minuteness of detail, or that the petitioner must establish *every* circumstance embraced in his averment. This would be too stringent a requirement, and would often defeat the remedial purposes of the statute. A debtor seeking to fraudulently conceal or dispose of his property resorts to secrecy and artifice in effecting his purpose; and it would be difficult

to trace all the steps, or discover all the facts, attending the perpetration of his fraud. But the allegations should be sufficiently pointed to describe with substantial identification the material facts which justify the characterization of the act complained of, as an act of insolvency, in order that the defendant, the Court and the jury may be informed, in substance, of the subject-matter of the accusation and inquiry.

*Judgment reversed.*

(Decided 9th February, 1882.)