LORENZO PRICE *v.* STATE OF MARYLAND.

[No. 63, April Term, 1930.]

492

*Decided July 29th, 1930.*

The cause was argued before BOND, C. J.; URNER, ADKIN,, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John M. Lyell,* for the appellant.

*Herbert Levy, Assistant Attorney General,* and *Herbert R. O'Conor, State's Attorney for Baltimore City,* with whom were *Thomas H. Robinson, Attorney General,* and *Elmer J. Hammer, Assistant State's Attorney for Baltimore City,* on the brief, for the State.

BOND, C. J., delivered the unanimous opinion of the Court on the questions raised by the bills of exceptions.

The appellant was, upon trial by jury in the Criminal Court of Baltimore City, found guilty of murder in the first degree; and after a review of the proceedings by the judges of the Supreme Bench of Baltimore City as a whole, on a motion for a new trial, and after the overruling of that motion, was sentenced to death. He has now brought before this court for its consideration two groups of exceptions, one of exceptions taken during the examination of talesmen for service on the jury, and one of exceptions taken during the trial. The charge was, more specifically, that on January 2nd, 1930, Price had killed one Reuben Heyman by shooting, after he had stopped Heyman's automobile on a road in the suburbs of Baltimore.

The talesmen, as they were questioned by the court as to their qualifications for service, were asked whether they had conscientious scruples against the infliction of capital punishment; and those who answered that they had, were asked, further, whether their scruples were such as could not be overcome by evidence. And those whose scruples could not be overcome by evidence were, on challenge by the State, excused for cause. Counsel for the defendant objected to these questions, and the overruling of his objections is the subject of the first group, of thirty-eight exceptions. In support of the objections, it is urged that since, by the Act of 1916, chapter 214, Code, art. 27, sec. 403, juries may, upon rendering verdicts of murder in the first degree, limit the punishment to life imprisonment by adding the words, "without capital punishment," conscientious scruples against capital punishment would not interfere with a juror's uniting in such verdicts, but would only necessitate the limitation of punish-

ment in order to make it possible for him to unite. And such a limitation enforced by the vote of one or more jurors having conscientious scruples against capital punishment is, on the appellant's construction, within the intention and purpose of the Act of 1916. But in this the court disagrees. In our opinion, it was the purpose of the act to empower juries to unite in a choice of punishments; that is, a choice between limiting punishment to life imprisonment and leaving the court unrestricted in fixing the punishment; and it was intended that all jurors should exercise a discretion in making that choice. A juror who should be prevented by conscientious scruples from joining in the exercise of the discretion would in our opinion be disqualified for performance of one of the functions devolved upon the jury, and should on challenge be excused for cause, as the talesmen were in this instance. The argument now made may have support in the decisions of courts in a few other states, but the great weight of authority seems to be in accord with the view we take. See *Commonwealth v. Bentley*, 287 Pa. 539; *State v. Juliano*, 103 N. J. L. 663.

We are unable to find any error in the action which is the subject of the first group of exceptions.

On the trial, it was contended in defense that the accused was insane at the time of the killing, so that he could not be held guilty of murder, or, at least, not of murder in the first degree. And Cena Price, his wife, testified that, six months after his marriage in 1920, her husband, who had been wounded in the war, "began acting so funny," and complained that his leg bothered him; and at her suggestion, she said, he went to the Government Hospital at Fort McHenry for treatment. She added that his leg had been treated at the hospital, but that "they have not done anything to his mind." And upon objection the court struck out her statement that they had not done anything to his mind. That action constitutes the subject of the thirty-ninth exception. The objection to its admissibility is that it constitutes hearsay testimony. It is not apparent that the admission or exclusion of the par-

ticular item of testimony would have any importance in the case, but, if its exclusion had been erroneous, the error would seem to have been corrected by the exhibition at the trial of the hospital records of treatment, and the lack of any record in them of treatment for mental condition. We find no reversible error, therefore, in the ruling covered by the thirty-ninth exception.

The same witness testified, further, to actions of the defendant between 1920 and 1929, relevant to the question of his sanity, and said that in January, 1929, a year before the killing of Heyman, she herself went to talk to a Mr. Stevenson of the Veterans Bureau; but, on objection by the State, she was not permitted to testify that her purpose in going was to have her husband's mental condition investigated. And the exclusion of that testimony forms the subject of the fortieth exception. The testimony, according to counsel's statement to the trial court, was sought as evidence of the wife's view of the seriousness of her husband's mental condition, and it was urged that as such it was admissible even though nothing was done at the Veterans Bureau in response to her application. The trial court considered the testimony irrelevent, and we concur in that ruling. The witness was permitted to narrate every incident in her husband's behavior upon which an inference of abnormality might be based. And the question objected to called for an impression or a question which was in her mind when she went to the Veterans Bureau, and not for any facts which might assist the jury to ascertain the defendant's mental condition. We find no error in the ruling thus excepted to.

---

PARKE, J., delivered the opinion of the Court with respect to the jurisdiction of the trial court to enter a judgment on the verdict.

During the course of the trial the traverser offered evidence of his mental state. The record discloses that the question of capacity was argued before the jury and that the attorney for the prisoner requested that the court give to the

jury for its guidance typewritten forms of the alternative verdicts which might be rendered. The court then exhibited to the counsel a paper containing the following six verdicts: Guilty of murder in the first degree; (2) Guilty of murder in the first degree without capital punishment; (3) Guilty of murder in the second degree; (4) Not guilty of murder, guilty of manslaughter; (5) Not guilty; and (6) Not guilty by reason of insanity, insane at the time of the commission of the offense and insane now. The attorney for the accused objected to the sixth form of verdict, and the judge advised him that the written forms would not be handed to the jury if he had any objection. The clerk then stated that the verdicts were those which had been used ever since he had been in the criminal court; and thereupon the attorney for the prisoner withdrew all objections to the paper, which was then delivered to the jury. The jury retired and returned in a few minutes with a verdict of guilty of murder in the first degree. As the action of the court was upon the express assent of the prisoner's attorney, there was neither objection made nor exception taken. No question is attempted to be presented by a writ of error, and, if there be any reviewable question on this appeal, it must be presented by the appeal from the judgment on the verdict.

It is a general principle and a statutory provision that any ruling of the court which is not presented by a demurrer, an exception, a motion to quash, or in arrest of judgment or to strike out the judgment for fraud or irregularity, cannot be considered on appeal. Neither the gravity of the offence nor the nature of the penalty can justify a departure from the precedent and statute upon which this rule firmly rests. Code, art. 5, secs. 4, 10; *Moore v. State,* 149 Md. 298, 300; *Munshower v. State,* 56 Md. 514; *Dunn v. State,* 140 Md. 163; *Mitchell v. State,* 82 Md. 527, 553; *Davis v. State,* 39 Md. 355, 386; *Simonson v. State,* 143 Md. 413, 417; *Brill v. State,* 144 Md. 68, 74; *Novak v. State,* 139 Md. 538, 542; *Kenny v. State,* 121 Md. 120, 123.

The application of the rule stated is, however, subject to the implicit condition that the court have jurisdiction to

render the judgment from which the appeal is taken. This limitation upon its operation is as well established as the rule. In *Horner v. O'Laughlin,* 29 Md. 465, 470, the rule and the condition of its applicability were stated when it was held that a judgment of a court of record proceeding according to the course of the common law could not be reversed "unless it affirmatively appears on the face of the record the court had no jurisdiction over the cause of the parties, or that the judgment was such as the law does not authorize to be pronounced upon the verdict, as was the case in *Watkins v. State,* 14 Md. 424. Any error or irregularity in the proceedings which does not reach the jurisdiction of the court or affect, in the sense indicated, the legal validity of the judgment, cannot be reviewed by this court either upon appeal or writ of error, because the appellate court in this state is, and has long been, expressly inhibited by law from deciding any point or question which does not appear to have been tried and decided by the court below. Act of 1825, ch. 117; Code, art. 5, sec. 12; and Act of 1861-2, ch. 154."

In the case quoted there was neither demurrer, bill of exception, motion in arrest of judgment, nor one to strike out the judgment for fraud or irregularity, but the court did not dismiss the appeal, and heard and decided whether there was any jurisdictional defect in the judgment rendered. *Armstrong v. Hagerstown,* 32 Md. 55; *Schiff v. Solomon,* 57 Md. 572, 581; *Fairfax Forrest Co. v. Chambers,* 75 Md. 604, 614; *Close v. Southern Md. Agric. Assn.,* 134 Md. 629, 633. It is true that the case from which the quotation is taken, and those cited, are civil cases, but the court makes no distinction when it is a criminal appeal. *Gaither v. Wilmer,* 71 Md. 361, 367. So, in a criminal case, if the court had no jurisdiction to impose the sentence inflicted, an appeal therefrom will lie. *Hendrick v. State,* 115 Md. 552, 558; *Queen v. State,* 116 Md. 678, 680; *Rayner v. State,* 52 Md. 368, 376.

The express assent of prisoner's counsel to the form submitted cannot confer jurisdiction; and, consequently, if the

court had no power to pronounce sentence on the verdict rendered, the court, *sua sponte,* must reverse the judgment. *Supra; Danner v. State,* 89 Md. 220, 228; *Price v. Hobbs,* 47 Md. 379.

When insanity is a defense in a criminal prosecution the judgment of the court is dependent upon a complete verdict of the jury. This dependency is illustrated by an analogous statutory requirement that if the accused be convicted of murder the jury must not only find the party guilty of the crime of murder but must specify the degree of murder of which the party is guilty. Should the verdict be guilty of murder, without specifying the degree, the verdict, by reason of the statutory provision, would be so defective that a court would be without jurisdiction to proceed to a judgment on the verdict. *Weighorst v. State,* 7 Md. 442, 451; *Ford v. State,* 12 Md. 514; *Williams v. State,* 60 Md. 402; *Hechter v. State,* 94 Md. 442; Code, art. 27, secs. 402-404. Similarly, in the case at bar, where the statute in operation explicitly and in mandatory terms exacts that, "when any person indicted for a crime, offense or misdemeanor shall allege insanity or lunacy in his or her defense, the jury impaneled to try such person shall find by their verdict whether such person was at the time of the commission of the alleged offense or still is insane, lunatic or otherwise." Code, art. 59, sec. 6. By these express provisions, the jury must find on two separate issues of guilt and of insanity. The first is double in that it involves primarily the legal capacity to commit the crime and if so, secondarily, the question of the traverser's guilt. The second issue, apart from the question of the traverser's sanity *vel non* at the time of the crime charged and the prisoner's guilty participation in it, is simply whether or not the accused is sane at the time of the trial. The importance of a verdict in accordance with the statute is evident.

A party is guiltless of crime committed by him if at its commission he was incapacitated by reason of insanity, because his condition makes him unable to entertain a criminal

intention, and hence he is not responsible for his acts, although he may have recovered his reason and be sane at the time of the trial. So, if the accused be found to have committed the crime while incapacitated by his insanity, but be sane at the time of the trial, he must be set free, because he is not guilty in law of the crime committed, nor, because of his recovered sanity, is there any cause for his being committed to custody and his property, if sufficient, placed in charge of a trustee. It is, therefore, only when the verdict of the jury is that the prisoner indicted was, at the time of committing the offense and of the verdict, insane, that the court may adjudge him not guilty but commit him to an institution to be discharged on the recovery of his sanity. Code, art. 59, sec. 7. If, however, the party be found insane at the time of the trial so as to incapacitate him, the law, out of a just and compassionate consideration for his condition, will not try him of the crime charged by suffering a conviction to be received, but will stay the charge and await such time when his reason shall be sufficiently restored, so as not to prevent him from properly conducting or advising as to the conduct of his defence, although he may have been of sound mind at the time the alleged crime was committed. The reason for this rests upon weighty considerations, for who knows better than the party charged the facts and the witnesses that may establish his innocence, and these may be his solitary and incommunicable possession by force of his mental condition. It is indisputable that an insane person can not make a rational defence. Again, if a party commit a crime and thereafter and before trial become insane, the law, out of humanity, would not suffer a sentence to be imposed. So, whether he be sane or insane when the crime was committed, if found by the jury to be insane at the time of the trial, the court would ignore all but this verdict and, staying the trial until such time as the party has recovered his reason, commit him to such place as is best suited to his condition. Code, art. 59, secs. 7, 8. *Archbold's Crim. Pl. & Pr.* (8th Ed.), vol. 2, p. 18. 1 *Wharton & Stillé's Medical*

500

*Jurisprudence* (5th Ed.), secs. 204, 205, 207, 209; 1 *Chitty, Crim. Law,* 761 (star).

It is a necessary conclusion from the language and the object of the statute that, where the defence of insanity is set up by a party on trial under an indictment for a crime, the statute exacts a specific finding by a jury of the sanity of the accused at two specific points in time, and that if their verdict does not specially find him sane or insane with reference to both when the crime was committed and when the verdict is rendered, the verdict is fatally defective. The inquiry as to insanity is primary, and is not answered by the verdict of guilty or not guilty, since the statute demands a finding on the question of insanity, and because a verdict of guilty or not guilty can only have reference to the time of the crime, and therefore leaves undetermined the issue of the prisoner's sanity at the time of the verdict. As in the crime of murder it is indispensable for the jury to find the degree in order for the court to know what sentence or judgment may be given, so where, after indictment, the defence is taken on insanity, it is similarly made requisite by statute that the party's sanity both at the time of the alleged offence and of trial must be found by verdict before a sentence or judgment may be passed.

This construction is supported by authority. *Gans' Digest of Criminal Law,* 88; *Hochheimer's Criminal Law* (1889), sec. 118, p. 114; *Devilbiss v. Bennett,* 70 Md. 554, *infra.* The statute now in force originated in the Act of 1826, ch. 197. In *Evans Harris' Entries* (1832), at pages 298 (31), 292 (11), will be found the verdict and judgment in a "prosecution in which insanity or lunacy is alleged by prisoner and found by the jury." The verdict runs "that the said A. B. did commit the offence charged against him in the said indictment, but that at the time of the commission thereof, the said A. B. was, and now is, insane (*or lunatic*), etc. This is the only form given, but it is the model by which a verdict according to the facts may be framed in compliance with the provisions of the statute. So, in *Haddaway v. Smith,* 71 Md.

319, an examination of the record shows the special verdict mentioned in the decision to have been that the traverser at the time of the commission of the offence for which he is indicted was insane, and that he still is insane. And in *Wagner v. Baltimore,* 134 Md. 307, the docket entries in the record reads: "Not guilty by reason of insanity. Insane then and insane now." In *Deems v. State,* 127 Md. 627, the defence of insanity was interposed. During the argument of counsel for the traverser to the jury, he asserted that, in addition to the four forms of guilty or not guilty which were possible to be rendered under an indictment for murder where the defence of insanity is not made, the jury could find a verdict of not guilty by reason of insanity. The trial judge here interrupted, and stated that there could be only one of four verdicts rendered in the case and that he would instruct the jury as to their form. The case then proceeded, and went to the jury with the instruction from the court that the jury could bring in any one of these four verdicts: Guilty of murder in the first degree; second, not guilty of murder in the first degree, but guilty of murder in the second degree; third, not guilty of murder, but guilty of manslaughter; fourth, not guilty. The jury retired, and when it came out and took its place in the box, and before the verdict was taken, the counsel for the accused asked and obtained leave to except to the court's instruction as of the time it had been given. Thereupon the jury returned a verdict of guilty of murder in the first degree, and the prisoner was sentenced to be hung. On appeal it was argued by the State, and adopted by the two dissenting judges, that the defence of insanity was not withdrawn from the jury, as it was necessarily involved in the issue raised by the plea of not guilty, and that there was nothing in the record to show that the defence of insanity had not been fully presented, argued, and submitted to the jury. The three judges who concurred in Judge Urner's opinion held that the "natural and inevitable interpretation to be placed upon the court's interruption and objection when the prisoner's counsel was suggesting a verdict of 'not guilty by reason of insanity' as a possible finding in the case and

the subsequent exclusion of that form of verdict from those to which the jury was confined by the court's instruction," without anything in the record to qualify the significance of its action or to enable the court to say that it was not understood by the jury according to its apparent purpose, was that the court had instructed the jury that the defence of insanity was not to be considered. Pages 628, 629.

The decision in *Deems v. State, supra,* is clear authority that, where the defence of insanity is raised and competent evidence is introduced tending to support it, the issue of insanity *vel non* must be passed upon by the jury, and that a verdict of guilty of the crime charged does not so involve a finding of sanity as to make it a necessary implication that in declaring the accused guilty the jury had, also, found him sane. The present case would seem to come within the reasoning of *Deems v. State, supra,* although the question here is not precisely the same, nor raised in the same manner. In the case at bar, the forms of verdict submitted differ from those in the Deems case only by permitting the jury to find whether the traverser was insane both at the time of the offence and at the time of the trial. It excluded a finding that the party was insane when the offence was committed but sane at the time of the trial; or that the party was sane at the time of the offence but insane at the verdict; or that the accused was sane on both occasions. Hence, in rendering a verdict of guilty of murder in the first degree in the case at bar, the jury found no verdict, as contemplated by the statute, on the issue of insanity; and, by ignoring this issue, its verdict was defective, and the court lacked jurisdiction to pronounce judgment. *Supra.* Without a specific verdict on the issue of insanity, there could be no valid sentence. To have avoided a mistrial the jury should have been sent back to return a verdict as to the insanity of the prisoner both at the time of the commission of the crime and of the verdict. After the jury was dispersed, it was too late for this to have been done or the verdict to have been amended.

The fact that the statute gives specific direction to the court, in section 7 of article 59 of the Code, as to the custody

of the prisoner only in the event that the jury should "find by their verdict that such person was at the time of committing the offense and then is insane or lunatic," neither limits nor is in conflict with the mandate of section 6 that the jury "shall find by their verdict whether such person was at the time of the commission of the alleged offense or still is insane, lunatic or otherwise." The statute is not in derogation of the common law, but in its aid and so to be beneficially construed. And at common law, mental incapacity, even if supervening between the commission of the crime and the day of trial, operates as a stay whenever found to exist, and the party is remitted to custody until his incapacity be removed. Blackstone thus states the law: "In criminal cases, therefore, idiots and lunatics are not chargeable for their own acts, if committed when under these incapacities; no, not even for treason itself. Also, if a man in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought. And if, after he pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defence?" Book IV, pp. 24, 25, 395, 396; 1 *Hale, Pleas of the Crown,* 34, 35; 1 *Chitty on Crim. Law,* 761; 1 *Russell on Crimes,* 29; 1 *Hawkins, Pleas of the Crown,* c. 1, s. 4, note (5). So, the common law practice would prevail, if sections 8 and 10 of article 59 of the Code are not broad enough to cover the case of a prisoner indicted and found by the jury to be unable to make a defence by reason of insanity supervening between the time of the offence and his trial. *Bishop on Crim. Law* (9th Ed.), sec. 396 (2).

On the fatally incomplete verdict given in the appeal at bar the trial court had no jurisdiction to proceed to a judgment, which, being a nullity, is no bar to a second trial, and the judgment entered should be reversed and the case should be remanded for a second trial under a writ of *venire facias de novo.* *Wharton's Crim. Pl. & Pr.* (8th Ed.), secs. 751, 757; *Ford v. State,* 12 Md. 514; *State v. Flanigan,* 6 Md. 167; *Williams v. State,* 60 Md. 402. *Bishop's New Crim.*

*Proc.,* sec. 666 (2); and because the act of 1826, ch. 197, is an adaptation of 39 and 40 *George* 3, ch. 94, compare *Reg. v. Berry,* L. R., 1 Q. B. D. 447; *Queen v. Goode,* 7 Ad. & El. 536, 112 Eng. Rep. 572; *Ex parte Emery,* L. R. [1909], 2 K. B. 81; *Felstead v. Rex,* L. R. [1914], A. C. 534; *Rex v. Lee Kun,* L. R. [1916], 1 K. B. 337; *Rex. v. Pritchard,* 7 C. & P. 303, 173 Eng. Rep. 134; *Ley's Case,* 1 Lewin, 239; *Dyson's Case,* 1 Lewin, 64, 168 Eng. Rep. 1026, 960.

The certificate of the trial court contains the statement that the forms of verdicts submitted by the court to the jury were the customary ones in the criminal courts of Baltimore City. But usage can not control when the words of the statute are not doubtful or ambiguous but plain. A mistaken general interpretation at *nisi prius* cannot alter the clear and definite meaning of statutory law. *Sutherland on Statutory Law,* secs. 307-309; *Endlich on the Interpretation of Statutes,* sec. 361; *Smith v. State,* 134 Md. 473, 380; *Arnreich v. State,* 150 Md. 91, 105, 106.

For the reasons assigned, the judgment must be reversed, and the case remanded to the end that a *venire de novo* may issue.

*Judgment reversed and a venire de novo awarded.*

---

BOND, C. J., filed a dissenting opinion, as follows, in which URNER and OFFUTT, JJ., concurred.

As I understand it, there is agreement among the members of the court who sat in this case that no reversible error is to be found in the adjudication of the question of guilt or innocence of the accused. So far as can be seen from the exceptions and the portions of the record of trial proceedings brought to this court, he was lawfully found guilty of murder in the first degree. And that finding necessarily negatived any defense on the ground of insanity. The defendant, in point of fact, urges only the existence at the time of the homicide of a temporary mental disturbance which left him without the premeditation or malice necessary to a finding of

murder in the first degree. But the majority of the court have concluded that the adjudication of guilt should be reversed, and the whole case tried a second time, because of a failure of the jury to add to their verdict of guilty a special finding on the sanity or insanity of the accused at the time of the homicide and now; and I dissent from that conclusion. As it appears to me, this is suddenly placing a novel construction on a very old statute, and a construction which is not justified, overturning a long settled practice on the contrary construction, adding to criminal trials complications which could not have been intended by the Legislature, adding them with no advantage to be gained by it, and doing this of the judges' own initiative, without having had the point raised below or suggested in this court.

From a brief investigation made since the point had been raised, it appears that the statute cited for this, now Code, article 59, sec. 6, and originally the Act of 1826, chapter 197, was one of several statutes adopted in the United States early in the last century, following the example of the English Criminal Lunatics Act, 39 & 40 Geo. III, chapter 94. That English statute was passed after the acquittal and discharge on the ground of insanity of Hadfield, who in 1800 had attempted the life of the king; and it was designed to avoid for the future the necessity of turning loose upon the community a lunatic of dangerous tendencies, when the condition and danger were revealed on trial for a particular crime. *Buswell, Insanity,* 462. Carr, *Trial of Lunatics,* 9; 1 *Russell, Crimes,* 29. The American statutes, as a rule, at least, have likewise been concerned only with disposal of lunatics charged with crime. That is the need to be met. And in Maryland, too, it has been widely assumed up to this time that the statute with which the majority opinion deals was concerned only with the disposal of criminal lunatics. And it seems to me that there is no sufficient reason for saying now, at this late date, that it was concerned with anything else. Referring always to article 59 of the Code, section 6 is expressed in broad, and, in some degree, inappropriate words.

When a person indicted for any crime "alleges" insanity in his defense, the trial jury is to find by their verdict whether he "was at the time of the commission of the alleged offense *or* still is insane." In our practice persons indicted for crimes never "allege" a defense of insanity, within the ordinary meaning of that word, or within the apparent meaning of it in the statute. And the word *or,* italicized above, should evidently read *and,* for the use of the words following, *still is,* implies a finding on previous insanity as well as that on present insanity. There would seem to be no likelihood of a purpose to give the jury a choice of times as of which mental condition should be found. I take the direction of the statute to be, then, to find whether the accused was and is insane. And it seems to me clear enough that all that is desired, and demanded by the statute, is that if a person tried for any crime is acquitted on the ground of insanity, that fact shall be specially stated, and it shall then be stated, also, whether the accused is still insane so that he may need to be confined. The one and only finding which is taken by the statute as the basis of any action by the court is just this finding of insanity at the time of the homicide and now. "If," says section 7, "the jury find by their verdict that such person was at the time of the commission of the offense and then is insane," he shall be confined. So Judge Miller, in *Devilbiss v. Bennett,* 70 Md. 554, 556, thus stated the effect of the statute when there has been an indictment: "The provisions are, first, that when any person indicted for a crime or misdemeanor shall allege insanity or lunacy as a defense, the jury impaneled to try him shall find by their verdict whether he was at the time of the commission of the offense, or still is, insane, lunatic or otherwise, and if they find that he was and still is insane or lunatic, the court shall cause him to be sent to the almshouse * * *" No possible finding other than this or insanity then and now would call for any action, subserve any purpose of the law, or render any action desirable. All other forms of verdict on the issue of guilt will, I think, be found to have their full, proper effect, with any mental conditions, without the aid of statutory additions. Added

findings on mental condition would be findings of no consequence. On the face of the whole statute, therefore, it seems to me the construction now promulgated is not well founded.

The argument that it may have been the purpose of the statute to require a special finding to establish jurisdiction in the court to proceed with the trial seems to me to lack plausibility. Would the right of a court to try a case be made dependent upon a finding reached at the end of the trial and by means of the trial? The law is not dealing with a court of special jurisdiction, the foundation of which might need to be shown affirmatively. And if it were, jurisdiction is not shown by any special finding on mental condition, for jurisdiction is not made dependent upon such a finding. On the contrary, this very section 6 takes the trial on the issue of guilt or innocence as a means of determining, along with the verdict on that issue, the facts desired on mental condition. Assuming the crime to have been committed within the geographical limits, the court has full power and jurisdiction to try a man who may in the end prove to be, in the opinion of the jury, insane now. The jury's finding of insanity now, so reached as a result of trial, would be a perfectly well-founded, valid one, and the trial would not be nullified by it. On the contrary, the finding would merely give the court an additional duty, as under the English and other statutes, to order the man confined. Section 7. It might be said that not only does jurisdiction not depend upon the additional finding one way or the other, but it produces the finding.

And in what could a jurisdictional question be found? It would be agreed, I take it, that if the accused should be conceded to be sane at the time of trial, there would be no question of jurisdiction of the court to try him, though he makes a defense on insanity at the time of the crime. And the only question which might possibly need to be decided to determine the rightfulness of going through with any trial would be the question whether the man is in a mental condition to go on. But that question would seem to be no more jurisdictional than a question whether a man is physically fit to go on, or whether he is too sick. Whether the particular de-

fendant is fit, or whether because he is unfit the trial should be deferred until he becomes fit (sections 6 and 8), is, so far as the court has anything to do with its determination, a question of administration such as a busy court decides every few days in the exercise of its jurisdiction over defendants indicted and brought before it. It is to be borne in mind, however, that when, before or during trial, any question arises of mental capacity of a particular defendant to proceed, the prescribed method for determining that capacity is not the trial itself. Under section 8, when any question arises of the capacity of the accused to conduct his defense or advise on its conduct, the question is referred to the Board of Mental Hygiene and settled by it. I am under the impression that it was stated in the oral argument in this case that such action had been taken with respect to Price, but the point did not appear important at the argument, and this impression may be wrong. It remains that the action may, for all the court knows, have been taken with respect to Price, that he may have been examined, and his capacity to go on with trial ascertained in the manner prescribed by law before the court proceeded. And if that has been done, what question of jurisdiction in the court to proceed could possibly remain? The record brought up does not contain any facts on this.

It is in every jurisdiction under the common law, so far as I can find, and apparently has been in Maryland generally until the present decision, passed as unquestioned that a court of law has full jurisdiction to try a criminal case in which a defense of insanity is interposed, whatever may be the verdict in the end, whether it does or does not find the defendant to be insane now. It is a jurisdiction the assertion of which has been made familiar, and even notorious. And it is notorious, popularly as well as professionally, that verdicts of guilty involve defeats and rejections by juries of defenses of insanity. That may surely be regarded as the common acceptation of verdicts of guilty. And no findings on insanity have been considered as necessary to be added to make that effect manifest. And it seems to me too unlikely to be accepted as true that the Maryland statute has required

special verdicts on sanity or insanity to be added, and especially unlikely that this has been required without its having been perceived by judges and attorneys of preceding times.

In trials in the criminal courts of Baltimore City, which for some time has meant in more than two-thirds of the criminal cases in the State of Maryland, and trials in which some able and careful judges have presided, it has been the practice for a long period of years to have no verdicts refer specially to sanity or insanity except verdicts of not guilty by reason of insanity, with insanity now. "Not guilty by reason of insanity. Insane at the time of the commission of the offense and insane now." And, as we know, in a court in which cases of a given kind arise with any frequency, such a settled form is likely to have been followed continuously since the form was studied out. Never, I suspect, has it been thought that the statute cited now required a verdict of guilty to have added to it any special finding on sanity, as the present decision requires. And the previous practice has proved to be a simple one, has worked satisfactorily, and met all needs in cases during the experience of one generation, at least, and probably during a much longer experience. Information available seems to indicate a similar practice in trials in the counties, with the exception of those in the Fifth Circuit in recent years. In *Spencer v. State,* 69 Md. 28, from Allegany County, in *Watts v. State,* 99 Md. 30, from Harford County, and in *Deems v. State,* 127 Md. 624, from Baltimore County, all cases in which defenses on the ground of insanity were attempted, no fault was found with verdicts of guilty of murder in the first degree without more. In the *Spencer case* the attempt was not supported by legally sufficient evidence, but we are not interpreting the statutory "allegation" of insanity as existing only when it is proved. The *Deems case* is regarded as giving support to the present majority view, but it decided only that a defendant was, upon his request, entitled to have a form of special verdict for a finding of not guilty by reason of insanity submitted along with other possible forms supplied by the court. The form of verdict of guilty, without any reference to insanity, appears to have

been accepted without comment as unobjectionable. Judge Urner, who wrote the opinion in the *Deems Case*, concurs in the conclusion that it did not hold that the verdict needed special findings on insanity to be added to it. These three cases were all cases of murder, and the only reported relevant cases found. Cases of lesser crimes, I have not investigated. Certainly in the murder cases cited, the verdicts of guilty without reference to insanity did not appear unusual and objectionable to the eighteen of our predecessors who sat in the cases in this court, or to the five judges who sat in them below There should be something more than hesitation, I think, to reject this conception of an old statute and practice under it which our predecessors held. The entertainment of a contrary view by a majority of judges holding court at one later term, seems hardly sufficient ground for change. Moreover, a practice which has been tested by a long and varied experience and proved sufficient for the needs has a better foundation than is possible for a contrivance of men at any one time, and for that reason should not be discarded except under the command of a new legislative enactment. *Baltimore v. State*, 15 Md. 376, 457.

That the present construction adds complications to criminal trials will readily be seen. For, if that construction is given its full effect, whenever an effort is made to defend on the ground of insanity upon any criminal charge in the scale of possible charges, from murder down to disorderly conduct, the verdict, whatever it may be, must have added to it special findings on the mental condition of the accused. Once we deny that the requirement is limited to verdicts of not guilty by reason of insanity, there is no stopping short of a requirement that every possible form of verdict shall have the findings added. Juries, as well as judges who sit on the facts, must add these findings. If judges attempt to aid juries by supplying them with forms of possible verdicts, as they have commonly done in the past, then, having to anticipate findings each way on any possible verdict, they must give tables of forms which would seem likely to bewilder a jury. In a trial for murder, for instance, in which ordinarily any one

of five forms of verdict on the issue of guilt or innocence is possible, the addition of special findings each way on mental condition at two points of time, at the time of the homicide and now, would require a table of twenty forms of verdict in all. And in trials on indictments of many counts on lesser charges, I believe a still greater number of forms might be required. Yet from all these, except the form needed for action under section 7 of the statute, not guilty by reason of insanity then and now, there would be no advantage, because none of them would be the foundation of any action by the court.

With all the chances of error which such a requirement must open up, with any omission in the combined verdict adopted now fatal to the trial on the question of guilt or innocence, a convicted defendant is permitted to bide his time, make no objection to a defect until after amendment is no longer possible, and then come before this court and have his conviction, however just and lawful it may be in itself, set aside and annulled. Never before, I believe, has this been permitted—at least not since the Act of 1825, now found in the Code, art. 5, sec. 10. All objections to verdicts have been required to be made in the court below, by motion in arrest of judgment or otherwise. Absurd verdicts, or verdicts so incomplete that the next step in the trial court cannot be taken, such as a verdict of guilty of murder which does not fix the degree, seem not to afford exceptions to this practice, because those verdicts could not be proceeded upon below, and could hardly come before this court. The statute, Code, art. 5, sec. 10, and the fourth rule of this court, which "most emphatically prohibit" this court from deciding any point or question which does not plainly appear by the record to have been tried and decided below, has been treated as a safeguard against such action. *Davis v. State,* 39 Md. 355, 386; *Mitchell v. State,* 82 Md. 527, 532; *Munshower v. State,* 56 Md. 514, 518; *Novak v. State,* 139 Md. 538, 541; *Moore v. State,* 149 Md. 298. No question whatever of the validity of the verdict of guilty as it stands has been raised in this case during the trial below or during argument in this court. There

has been no objection at all to the form of verdict. And the objections to the judgment are all objections to steps in the proceedings before verdict rendered, and have touched on the form of verdict only in that the form of not guilty by reason of insanity and insane now, supplied to the jury upon the application of counsel for the accused, and without objection by him, is thought to have obstructed in some way an argument for a verdict of no more than guilty in the second degree. Counsel have not argued that a verdict of guilty should have had any findings on mental condition added to it. The case on that point must be, I think, foreign to the conceptions of counsel for both sides and the court below, and must be one of which they will receive their first intimation upon the filing of these opinions.

––––––

OFFUTT, J., also filed a dissenting opinion, as follows:

Lorenzo Price was indicted, tried, and convicted in the Criminal Court of Baltimore City of the crime of murder in the first degree and upon his conviction sentenced to be executed.

At the conclusion of the trial, just before the case was given to the jury, counsel for the defendant requested the court to "state to the jury the forms of verdict." In response to that request the court permitted the jury to have a type-written paper containing the forms of several verdicts, one of which they might return. The last form was "Not guilty by reason of insanity. Insane at the time of the commission of the offence and insane now." Counsel for the defendant criticised that form, but although told by the court that if he objected it would not be given to the jury, finally said, "Let the jury have it."

Except for such inferences as may be drawn from the fact that that form was included in the list of possible verdicts which the jury were told they might return, there is nothing in the record before us tending to prove that insanity was ever alleged as a defence in the case.

Counsel for Price in his argument in this court did assert (*Brief*, p. 15) that there was before the jury evidence sufficient to justify "the jury in finding the mind of the appellant so far impaired at the time of the commission of the offense that he could not form the wilful, deliberate and premeditated purpose to take life as to constitute the offense murder in the first degree; and that so finding, the verdict of murder in the second degree would have been proper." But not only is there no evidence in the record before us to justify that assertion, but even if there were, it would not amount to an allegation of insanity. For insanity to constitute a defence to a charge of crime must be such a derangement of the mental faculties or want of mental power as will make it impossible for the accused to understand the nature or quality of his act, to resist his criminal impulses, or to know that his act is wrong.

If therefore one is sane enough to be responsible for one crime, he is necessarily sane enough to be responsible for another, and one who is sane enough to commit murder in the second degree must at the same time, by force of the same rule, be sane enough to commit murder in the first degree. And an allegation that the accused as a result of passion, fear, jealousy, love, hatred, or even mental weakness, was incapable of the deliberate and premeditated malice which is an essential ingredient of murder in the first degree, does not amount to an allegation of the kind and degree of insanity which can be accepted as a defence to a charge of crime, unless it also imputes a mental condition which prevented the accused from knowing the nature and quality of his act, or if he did know that, from knowing whether it was right or wrong. 1 *Wharton & Stillé, Med. Jur.*, secs. 163, 177.

But while it does not appear from the pleadings or so much of the evidence as appears in the record that insanity was alleged as a defence to the indictment, yet it may possibly be inferred from the court's action in instructing the jury as to the form of verdict on that issue, that it was so raised.

Assuming, therefore, for the argument, that it was in the case, then section 6, article 59 of the Code, that "When any

person indicted for a crime, offense or misdemeanor shall allege insanity or lunacy in his or her defense, the jury impaneled to try such person shall find by their verdict whether such person was at the time of the commission of the alleged offense or still is insane, lunatic or otherwise," applied.

If it was an issue, then the court's instruction to the jury as to the several forms of verdicts which they might return was manifestly incomplete and erroneous, as in effect it told them that insanity was not a defence unless it existed both at the trial and at the time of the offence. In other words, under the instruction, even though the jury believed the accused to have been insane at the time of the offence, they could not, on the only form dealing with that issue, acquit him on the ground of insanity, unless they found that his insanity continued to and existed at the trial. The statute, of course, did not mean that, nor did it say that, and the jury should have been told that, if they found that the accused was insane at the time of the offence, they were empowered to return a verdict of "not guilty by reason of insanity at the time of the offence." Whether he was sane or insane at the time of the trial was a collateral and an independent fact, having no necessary connection with his guilt or innocence, but which the jury were authorized to decide, not as bearing upon that issue but for the guidance of the court in disposing of the accused.

But while the instruction was erroneous, this court has no power to set aside the judgment and sentence on that ground for the following reasons: (1) Because the accused by his counsel assented to the instruction. (2) Because the court was not asked to rule and did not rule on the question as to whether the jury should be so instructed. (3) There was therefore no exception to any action of the court in respect to it, and (4) Under the procedure established by its rules, its decisions, and the statute, this court can not consider any question not raised in the trial court. *Rule No.* 4; *Hamilton v. State,* 127 Md. 313; Code, art. 5, sec. 10. But conceding so much, it is nevertheless contended that the verdict was so faulty and incomplete that the trial court had no power or

jurisdiction to enter a judgment on it, because it failed to find specifically whether the accused was at the time of the offense, or was at the time of the trial, "insane, lunatic or otherwise." And that view is accepted in the able and brilliant opinion of Judge Parke, speaking for the majority of this court.

That conclusion necessarily rests upon two propositions which I am unable to accept: (1) That the purpose and effect of the statute is to deprive the jury in criminal cases, where insanity is alleged as a defence, of the power to return a general verdict, and (2) that the Legislature itself had the authority thus to limit the power of a common law jury.

So much of the present law as deals with the functions of a jury in cases where insanity is alleged as a defence to crime is in substance identical with that part of section 1, chapter 197, Acts 1826, which deals with the same question.

The older statute refers to a "crime or misdemeanor"; the present statute adds the word "offence"; the older statute applied where the accused "sets up or alleges" insanity as a defence, while the present law applies to cases where the accused "shall allege insanity * * * in his or her defence." Except for these trifling differences in phraseology, the old and the present statutes are in respect to this question the same. Both the original and the amended statutes provided that, if the jury found that the accused was insane at the time of the offence "and" insane at the time of the verdict, that the court might commit him to some appropriate place of detention. Its obvious and single purpose was to protect the public from the insane impulses of dangerous lunatics who might be acquitted of charges of crime committed while insane, by empowering the courts trying the cases to commit such persons until it should satisfactorily appear that their reason had been restored. Such an inquiry was wholly collateral to and independent of the guilt or innocence of the accused, which depended upon his mental condition at the time of the crime and not upon his mental condition at the time of the trial. And that seems to have been the construction placed upon the statutes not only by the courts of Baltimore

County and Baltimore City from time immemorial, but by the Legislature itself, when by chapter 699 of the Acts of 1916, it authorized the court of its own motion to order at or prior to the trial an examination of the then mental condition of any person charged with a criminal offence cognizable by such court. The plain purpose of the statute was not to protect the accused, for he was already protected by the settled law that, if insane at the time of the offence, he could not legally be convicted thereof, but to protect the public from the menace created by permitting one, acquitted of a criminal offence on the ground of insanity and who still was at the time of his acquittal insane, to be at large. In my opinion, it was never intended that where the jury found a general verdict of guilty of the offence charged, they were required also to affirmatively find that the accused was sane at the time of the offence, for such a verdict necessarily also determined that question. Nor were they obliged to find in such a case that he was sane at the time of the trial, because the verdict of guilty itself placed the accused in the custody and under the control of the court, and the presumption arising from the verdict would be that, as the accused was sane at the time of the offence, he was also sane at the time of the trial.

Any different construction would not only mean that for more than a century the profession in a large part of the state has been mistaken in its interpretation of the statute, but that in many courts of the state through that period many persons have been illegally convicted of criminal offences, and without sufficient warrant of law have been subjected to penalties imposed in consequence of such convictions. And I personally am unwilling to accept the view that so many of the able and conscientious lawyers, who on the bench and at the bar have administered the law in this state since 1826, have been guilty of error so injurious and so tragic.

Moreover, I very seriously question the power of the Legislature to require juries in criminal cases to find special verdicts.

Article 15, section 5, *Const. of Md.*, provides that in all criminal cases the jury shall be "the judges of law, as well as of fact." That provision has been given a construction so narrow and literal as to deprive the courts of any power to supervise or control the interpretation of the law, statutory or common, by juries in criminal cases. *Franklin v. State,* 12 Md. 236; *Wheeler v. State,* 42 Md. 570; *Broll v. State,* 45 Md. 356; *Bloomer v. State,* 48 Md. 538; *Bell v. State,* 57 Md. 108; *Balto. & York Turnpike Co. v. State,* 63 Md. 573; *Beard v. State,* 71 Md. 275; *Goldman v. State,* 75 Md. 612; *Jules v. State,* 85 Md. 312; *Esterline v. State,* 105 Md. 636; *Rasin v State,* 153 Md. 432; *Diebert v. State,* 150 Md. 695; *Klein v. State,* 151 Md. 489; *Newton v. State,* 147 Md. 87.

The result has been to establish a system of criminal procedure in this state which is unique (see general discussion, *Sparf v. United States,* 156 U. S. 64). Under the construction uniformly given this section of the Constitution, the courts have no inherent power, nor can the Legislature confer the power upon them, of finally deciding any question of law in a criminal case tried by a jury.

If that is so, it seems to follow that the Legislature can not deprive juries of the power to render general verdicts which answer every issue of law or fact involved in criminal cases tried by them. It may have the power to require such juries to decide, in cases where the accused is acquitted on the ground of insanity, whether at the time of the trial he still is insane, not as a part of the issues in the criminal case but as collateral thereto. But the failure of the jury to respond to such an issue can have no effect on the validity of a general verdict of guilty, because such a verdict necessarily assumes the sanity of the accused at the time of the offence.

That question was not involved in the *Deems Case,* 127 Md. 627, because that case was reversed on the ground that the trial court not only exceeded its power in peremptorily instructing the jury at all, but because its instruction was erroneous.

Nor is there any analogy apparent to me between such a case as this, and cases where the verdict of the jury failed to find what crime the accused had committed, as where the jury found him guilty of murder without stating whether in the first or second degree.

For as murder in the first degree and murder in the second degree are distinct offences, such a verdict was necessarily as meaningless as though it had found that the accused had committed "some crime, but what crime the jury cannot say."

For these reasons I have some doubt as to the power of the Legislature to enact a statute which would have the effect given this statute by the majority opinion.

Being of the opinion indicated by these expressions, I have felt constrained to dissent from the views of the majority. And while I fully concur in the very elaborate and careful opinion by Judge Bond, I have deemed it proper in a case of this character to add to what he has said this statement of the reasons for my dissent.