# BERMAN *v.* WARDEN OF MARYLAND PENITENTIARY

[App. No. 83, September Term, 1962.]

*Decided September 11, 1963.*

Before the full Court.

HENDERSON, J., delivered the opinion of the Court.

In this application for leave to appeal from a denial of post conviction relief, the applicant raises four questions that may be restated as follows:

(1) Was Judge Oppenheimer, in the court below, disqualified from hearing the application?

(2) Was the applicant entitled to be present when his application, presented by court-appointed counsel, was heard?

(3) Is the fact that there were numerous prior denials of writs of habeas corpus, but no appeals or applications for leave to appeal therefrom, a bar to the present petition under the Post Conviction Procedure Act?

(4) Was the sentence of life imprisonment passed on September 28, 1928, in the applicant's trial for murder, a nullity, because of lack of jurisdiction to enter it upon an invalid verdict, and a violation of due process?

1. The alleged disqualification of Judge Oppenheimer is based upon the fact that before he was elevated to the Bench he was head of the Board of Correction during part of the time Berman was in the penitentiary, and upon the fact that Judge Oppenheimer at one time took an active interest in the Jewish Big Brothers League. Berman also alleges that he had some correspondence with Judge Oppenheimer in which the Judge was "unfriendly." We find no merit in these contentions. It may be noted that at the hearing below counsel expressly withdrew

and disclaimed all charges of bias or disqualification against Judge Oppenheimer, made by their client. We find nothing in the facts alleged to show bias or to require his disqualification.

2. We find nothing to require the presence of the applicant at the hearing below. That hearing was concerned only with a question of law, apart from one question of fact that was covered by stipulation and a matter of public record. Even in a murder trial we have held that an accused need not be present when legal arguments on motions for directed verdicts are heard. *Martin v. State,* 228 Md. 311, 316; *Brown v. State,* 225 Md. 349, 351. In *Duckett v. Warden,* 230 Md. 621, 626, Chief Judge Brune, for the Court said: "If this Post Conviction case had been considered simply on the allegations of the petition, those allegations might well have been found insufficient and, if so, there would have been no occasion for the court to receive evidence or to order the attendance of the petitioner under Maryland Rule BK 44 d or e."

3. Judge Oppenheimer expressed the view that relief was not available because prior applications for habeas corpus had not been appealed, and that the matter had thereby been "previously and finally litigated or waived," as provided in Code (1962 Supp.), Art. 27, sec. 645 A (a), citing *Plater v. Warden,* 220 Md. 673. See also *McClain v. Warden,* 220 Md. 666 and *Tillett v. Warden,* 220 Md. 677. It was stipulated that Berman had filed a number of applications for writs during the period from 1951 to 1958, when there was a right to seek leave to appeal from denials thereof.[1] All of Berman's applications raised precisely the same point sought to be raised on the merits in the instant case. Berman, however, never elected to ask leave to appeal to this Court. In the *Plater, McClain* and *Tillett* cases, *supra,* an application for leave to appeal raising the same point had been previously denied by this Court.

The instant case would seem to turn upon waiver, but coun-

---

1. The right to appeal was first granted by Ch. 702, Acts of 1945. The statutory provisions as to finality came into being by Ch. 625 of the Acts of 1947, when the right to appeal was repealed, and the right to apply for leave to appeal was enacted. The Post Conviction Procedure Act was adopted by Ch. 44, Acts of 1958, and the right to seek leave to appeal in habeas corpus cases was repealed, by Ch. 45 of the Acts of 1958.

sel for the applicant strongly urge that there can be no waiver, in the light of *Fay v. Noia,* 372 U. S. 391. That case, of course, turned on the question whether failure to appeal a state conviction barred relief by way of habeas corpus in a federal court, not with the effect of prior applications upon subsequent relief through post conviction procedures, which would seem to depend entirely upon state policy. The Supreme Court expressly stated (p. 438) that "the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." There can be little doubt that Berman deliberately and knowingly forbore to appeal repeated denials of his petitions for writs of habeas corpus in order to prevent finality of adjudication as prescribed by the statute authorizing applications for leave to appeal. There was no question of "Russian Roulette" in this choice.

But we leave the question open. We prefer to rest our decision on the fourth question raised, rather than the third. Berman states in his application for leave to appeal that he does so "reluctantly," and because the Federal Court of Appeals of the Fourth Circuit had directed him to "exhaust" his state remedy. With this decision on the merits we finally decide a point that has been decided, adversely to his contention, some seventy-five times by state judges, but without any prior decision by this Court.

4. The whole basis of Berman's claim for relief rests upon the decision of this Court in *Price v. State,* 159 Md. 491 (1930). That was a four to three decision, in which Judge Pattison did not participate. The majority opinion was written by Judge Parke. The case was sent back for a new trial in which Price was again convicted of murder in the first degree. See *Price v. State,* 160 Md. 670. Chief Judge Bond wrote a dissenting opinion in the first case in which he was joined by Judges Offutt and Digges. Judge Offutt also filed a separate dissent. The holding was that where a defense of insanity was raised, although not pleaded, the jury should have rendered a separate verdict on the issue of insanity, by a proper construction of Code (1924), Art. 59, sec. 6. Chief Judge Bond vigorously disagreed with this construction of the statute, which had been in

effect for more than a century with a consistent practice contrary to the holding of the majority. It may be noted that the General Assembly amended the section in 1931 to require a preliminary hearing on insanity, and by Ch. 81, Acts of the Special Session of 1933, reinstated the former practice as an emergency measure. The section, as amended, appears in Code (1957), Art. 59, sec. 7, and provides among other things that if a verdict does not contain a finding on insanity, a finding of sanity is conclusively presumed from the verdict of guilty of the crime charged. Cf. *Rose v. State,* 177 Md. 577.

In the first *Price* case Judge Parke was faced with the fact that Code (1924), Art. 5, sec. 10, and what was then Rule 4 of the Court of Appeals, provided that this Court should not consider any point not raised below. Not only was no objection taken to the instructions as to the form of the verdict, which a majority of the Court considered erroneous, but the instructions were expressly approved by counsel for Price. Judge Parke might, perhaps, have relied upon the doctrine of plain error, or upon the inherent power of an appellate court to correct an error *ex mero motu*. Instead, he sought to invoke the implied exception that a jurisdictional error may be considered at any stage of a case. He held, or implied, that the alleged error was jurisdictional. In this we do not agree. If we assume, without deciding, that the construction placed upon the statute was permissible and correct, and not cured by a general verdict of guilty in which a finding of sanity would seem to be implicit, we reject and overrule any intimation or holding that the alleged error was jurisdictional. At most, it was a technical error in procedure which did not nullify the judgment of a court of general jurisdiction having complete jurisdiction of the person and subject matter, or render it subject to collateral attack. We are not aware of any decision of the Supreme Court of the United States, or of any federal court, holding that the rendition of a general verdict or the entry of a judgment under such circumstances is a violation of due process. On the contrary, in a characteristically able opinion Judge Chesnut in 1936 held that Berman was not deprived of due process. See *Ex parte Berman,* 14 F. Supp. 716.

As a matter of fact, Judge Parke had also held so in deny-

ing Berman's application for a writ of habeas corpus in 1935, in the Circuit Court for Carroll County, No. 796, Misc. Docket. This opinion was quoted in full by Judge Frank in an addendum to his opinion in Berman's second application to him for a writ of habeas corpus, published in the Daily Record of June 5, 1935. It was also quoted at length by Judge O'Dunne in an opinion denying one of Berman's three applications to him, published in the Daily Record of February 28, 1936. Judge Parke, said, in part: "The relator charges that he was convicted without due process of law, that the Court had no power to pronounce sentence nor to commit him, and that the commitment is illegal. These charges are of no force against the facts shown that he was indicted, tried, convicted, sentenced and committed for a felony by a Court of competent jurisdiction of his person, of his crime, and of the place of its commission and that the sentence imposed was within the power of the Court to inflict." We agree.

*Application denied.*