## JAMES DALE TANNER *v.* STATE OF MARYLAND

[No. 356, September Term, 1969.]

*Decided May 26, 1970.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Judson R. Wood* (*William O. E. Sterling* on the brief) for appellant.

*Henry R. Lord, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Joseph D. Weiner, State's Attorney for St. Mary's County, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *William M. Cave, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, James Dale Tanner, was jointly indicted with Charles Eugene Snook in the Circuit Court for Montgomery County in a three count indictment charging rape, assault with intent to rape, and assault and battery. In addition to a plea of not guilty, appellant filed written pleas (1) that he was insane at the time of the commission of the crime and (2) that he is presently insane. As a result of the pleas, he was sent to The Clifton T. Perkins State Hospital for a pretrial mental evaluation. After his return from the hospital, he filed an affidavit of removal and the case was removed to the Circuit Court for St. Mary's County for trial. On May 5, 1969, appellant was tried in the Circuit Court for St. Mary's County by a jury, Judge Philip H. Dorsey, Jr., presiding, and was convicted of the crime of rape (first count). He was sentenced to a term of eight years under the jurisdiction of the Department of Correction, and the clerk was directed to send with the commitment a request that appellant be examined at the Patuxent Institution to determine whether he was a defective delinquent. The court further ordered the clerk to attach a notification that appellant be returned to The Clifton T. Perkins State Hospital where he was being treated, to be held under maximum security.

The sole contention on appeal is that the lower court erred in its finding that the testimony produced on behalf of the appellant at the preliminary hearing was not

sufficient to rebut the presumption of sanity and to raise a doubt as to the sanity of the appellant, as defined in Article 59, § 9 (a), Md. Code, in the minds of reasonable men.

After the jury was sworn and impanelled the court proceeded, out of the presence of the jury, to determine preliminarily whether appellant was competent to stand trial and, if so, whether there was sufficient proof to raise a doubt as to appellant's sanity at the time of the alleged offense in the minds of reasonable men, in accordance with the procedure laid down by this Court in *Strawderman v. State,* 4 Md. App. 689.

At the preliminary hearing, the appellant offered as a witness Dr. Ian MacKay, a specialist in Forensic psychiatry at The Clifton T. Perkins State Hospital. Dr. MacKay testified that he first saw appellant at Perkins in September of 1968 and again at a staff meeting on September 19th. Appellant was discharged on September 26, 1968, and later returned to the hospital on January 3, 1969, where he remained until April 18, 1969. On January 17, 1969, he was transferred to Dr. MacKay's ward (Ward #10) from the Admission Ward, where he remained until April 18, 1969, a total of 90 days. During that time Dr. MacKay saw the appellant at least fifty times, for a considerable length of time on each occasion. He also interviewed appellant prior to trial for a period of ten to fifteen minutes. He was then asked if he had an opinion as to whether appellant was competent to stand trial. He stated that he did, and when asked what that opinion was replied: "I think he understands the nature and the object of the charges against him, and I think he's able to assist in his defense." Further in his testimony the following colloquy took place:

BY MR. WOOD:

"Q Now, Doctor, do you have an opinion as to whether Mr. Tanner, on April 19, 1968,[1] is sane or insane?

---

1. April 19, 1968 was the date of commission of the alleged offense.

A  I have an opinion now Mr. Wood.

Q  And what is that opinion, sir?

A  My opinion is that it is almost certain that at that time he lacked substantial capacity by reason of disease or defect of the mind to appreciate the criminality of his conduct or to conform that conduct to the requirements of the law."

"THE COURT: Now, what disease of the mind was he suffering at that time?

THE WITNESS: Well, Your Honor, this is the thing that I have conjured up in my mind, because I can see no evidence of psychosis in this patient, but I have considered the possibility and perhaps the probability of what they call what is called a dissociated reaction, a state of affairs in which a patient is so overwhelmed by his—if I may quote. If I may quote from the official manual, Your Honor, the Diagnostic Manual for Mental Disorders of the American Psychiatric Association, and this is one of the sub-divisions [sic] of what is called a hysterical neurosis. This characterizes his character by an involuntary psychogenic loss or disorder of function: 'Symbols characteristically begin and end suddenly in emotionally charged situations and are symbolic of underlying conflicts. Often, they can be modified by suggestion alone'. And the sub-division [sic] to which I'm referring, Your Honor, is the hysterical neurosis dissociated type. 'And a dissociated type in all reactions may occur in the patient's state of consciousness, all in his identity to produce some symptom as amnesic symbolism fugue and multiple personality.' "

BY MR. WOOD:

"Q  Well, doctor, you are familiar with Article 59, Section 9, the test of responsibility at the time of the alleged offense?

A I am.

Q And you feel that he fits within the definition of an insane man on April 19, 1968?

A I do."

* * *

"THE COURT: Now, doctor, on April 19th, do you feel that he lacked substantial capacity, either to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law?

THE WITNESS: I do now, Your Honor. Yes.

THE COURT: You say you do now. When did you form that opinion?

THE WITNESS: I formed that opinion, Your Honor, since I came to know him much better than I did the first time he came to the hospital, because at that time I thought the reverse; although, of course, at that time, I didn't know him anything like as well as I know him now.

THE COURT: Well, through this acquaintance-ship with him, what was his conduct that led you to change your original opinion?

THE WITNESS: Nothing specific, Your Honor. It was the whole panorama of his life situation as he presented it to me over the hours that he spent with me during those 90 days that he was in Ward 10; and, generally speaking, it's the answer to your question, Your Honor.

* * *

THE COURT: Was he suffering with a mental disease?

THE WITNESS: I think he was, yes, Your Honor.

THE COURT: How would you diagnose that?

THE WITNESS: Well, this diagnosis that I gave is really a diagnosis of exclusion, because as I said before, Your Honor, I don't believe he's psychotic and I don't believe any one believes he's psychotic. He certainly is sick, psychiatrically sick, emotionally sick."

This was followed by a long cross-examination of the witness by the State. No further evidence was offered by the appellant and no evidence was offered by the State; nor was the staff report of The Clifton T. Perkins State Hospital offered in evidence. Based solely on the testimony of Dr. Ian MacKay the lower court found that the doctor's testimony, standing alone, was not sufficient proof of the insanity of the accused to raise a question in the minds of reasonable men as to whether he was or was not sane at the time of the commission of the offense.

The lower court determined that appellant was competent to stand trial according to the standards set forth in Article 59, § 7, Md. Code, namely, that he was able to understand the nature of the proceeding against him and to assist in his defense. We agree, since that was the opinion of Dr. MacKay, the sole witness to testify.

However, the lower court found that the testimony of Dr. MacKay did not overcome the presumption of sanity, that is, his testimony did not raise a reasonable doubt that the appellant lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law at the time of the alleged offense. Upon this determination the trial judge refused to submit this issue to the jury.

The jury was recalled and at the conclusion of the State's case the appellant made a motion for judgment of acquittal, which was denied. At the conclusion of the entire case appellant renewed his motion, which was again denied. The court then instructed the jury and after argument of counsel the jury retired to consider their verdict. After arriving at a verdict, the jury returned and rendered a verdict of guilty of rape, without capital punishment (first count).

Appellant contends that the lower court erred in refusing to submit the question of appellant's sanity to the jury. The rule as laid down by this Court in *Strawderman v. State, supra,* is:

"(1) [A] man is presumed to have been respon-

sible for criminal conduct and sane at the time of such conduct until, after the filing of a proper plea, there is adduced proof that he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as a result of a mental disease or defect ('mental disease or defect' do not include an abnormality manifested only by repeated or otherwise anti-social conduct) sufficient to raise a doubt as to his sanity as defined in the minds of reasonable men, and (2) when there has been offered proof of insanity so defined sufficient to overcome the initial presumption of sanity of the accused the State must prove sanity, as well as the other elements of the offense, charged beyond a reasonable doubt."

Dr. MacKay's testimony was the sole testimony before the lower court on the question of appellant's sanity at the time of the commission of the alleged offense. In Dr. MacKay's opinion, at that time, appellant lacked substantial capacity by reason of disease or defect of the mind to appreciate the criminality of his conduct or to conform that conduct to the requirements of law. The lower court questioned the witness as to what disease of the mind the appellant was suffering from at that time. The doctor defined it as "hysterical neurosis dissociated type," and upon being questioned further by the court explained that his opinion was formed by the whole panorama of appellant's life situation as it was presented to him over the hours that he spent with appellant during the 90 days appellant was in Ward 10. The lower court concluded that the testimony of Dr. MacKay was not sufficient to raise a doubt as to the sanity of the accused, as defined, in the minds of reasonable men, and refused to submit the question to the jury. The trial judge felt that the witness based his opinion as to insanity under Article 59, § 9 (a), Md. Code on appellant's abnormal behavior, which is excluded under the last sentence of that section.

We are of the opinion that the proof adduced through the testimony of the sole witness, Dr. Ian MacKay, unrebutted, was sufficient to surmount the threshold question of doubt as to the appellant's responsibility, and that the refusal of the trial judge to submit the question of appellant's sanity at the time of the commission of the crime to the jury was clearly erroneous. Maryland Rule 1086. See *Strawderman v. State, supra; Rozzell v. State,* 5 Md. App. 167; *Turner v. State,* 5 Md. App. 584; *Mahoney v. State,* 8 Md. App. 44; *Brown v. State,* 8 Md. App. 462.

The State contends not only that the evidence was insufficient to present the question of appellant's sanity to the jury, but also that appellant had failed to properly preserve the preliminary question of appellant's sanity at the time of the offense for review by this Court. We do not agree. Appellant by a plea in writing raised the question of insanity at the time of the offense and offered evidence in support thereof at the preliminary hearing on the plea. The lower court found the evidence insufficient to submit the question to the jury. The trial began and at the conclusion of the State's evidence the appellant filed a motion for judgment of acquittal, which was overruled. The motion was renewed at the conclusion of the entire case and again overruled. Since the lower court had already ruled adversely on the preliminary question and on the two motions for judgment of acquittal, we find no waiver in the fact that appellant made no objection to the court's instructions.

While we thus agree that the trial court erred in not permitting the question of appellant's sanity to be determined by the jury we think our remand of the case need only direct that further proceedings be conducted *solely* with respect to that question, no other issues having been presented by the appellant in his appeal. Accordingly, acting under Maryland Rule 1071a, we neither affirm or reverse the judgment; instead we remand the case for the purpose of determination of the question of appellant's sanity, either before a jury or before the court sitting without a jury, as appellant may elect. At such proceed-

ing the burden of proof will be on the State to show beyond a reasonable doubt that appellant was sane at the time of committing the crime. If the trier of fact, by its verdict, finds that appellant was insane at the time the crime was committed and hence not criminally responsible for his conduct, then the lower court must strike out and vacate the judgment of conviction. Should the trier of fact conclude from the evidence that appellant was sane the judgment of conviction will stand, appellant having the right to take a timely appeal from that determination to this Court. See *Brady v. State,* 226 Md. 422, affirmed *Brady v. Maryland,* 373 U. S. 85.

> *Judgment neither affirmed or reversed; case remanded for further proceedings in accordance with this opinion.*