## JAMES HENRY MOORE *v.* STATE OF MARYLAND

[No. 473, September Term, 1971.]

*Decided May 24, 1972.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, GILBERT and CARTER, JJ.

*Frank Cannizzaro, Jr.,* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Thomas Howard, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant James Henry Moore was convicted by Judge Charles D. Harris, sitting non-jury in the Criminal Court of Baltimore, of murder in the second degree and sentenced to fifteen years in prison under indictment number 192. At the same time he was also convicted of a violation of Maryland Code, Article 27, Section 35A (child abuse) and sentenced to ten years in prison under indictment number 193. The sentences entered on May 17, 1971 were to run concurrently. On May 28, 1971 an appeal was filed from both judgments. Thereafter, on June 25, upon further consideration but without any formal motion having been filed, the trial court struck the verdict and sentence under the murder indictment and substituted therefor a verdict of manslaughter and a sentence of ten years. Appellant contends on this appeal that the evidence was not legally sufficient to justify either his manslaughter conviction or his conviction for child abuse. He also contends that the offense of child abuse must be vacated because it merged into his conviction for murder in the second degree.

The question whether the lower court had jurisdiction to strike the murder conviction and substitute in its place

the manslaughter conviction after the appeal had been filed in this court was neither briefed nor argued at the time of the initial argument before this court on January 20, 1972. If the lower court was without jurisdiction to so act after the appeal had been filed, the entry of the manslaughter conviction would have been a nullity and, consequently, we would not entertain the question on appeal respecting the legal sufficiency of the evidence to support that judgment. See Maryland Rule 1085.[1] Reargument on this question was ordered for April 27, 1972. We conclude from the authorities that the lower court did not have jurisdiction to strike the murder conviction after the appeal to this court had been duly filed. In *State v. Jacobs,* 242 Md. 538, 540, the court quoted with approval from *Bullock v. Director,* 231 Md. 629, 633, as follows:

> "An appeal to this Court from a *nisi prius* court does not necessarily stay all further proceedings in the trial court, nor does it strip said court of all power over the proceeding in which the appeal has been taken. The trial court may act with reference to matters not relating to the subject matter of, or affecting, the proceeding; make such orders and decrees as may be necessary for the protection and preservation of the subject matter of the appeal; and it may do anything that may be necessary for the presentation of the case in this Court, or in furtherance of the appeal. But, when an appeal is taken, it does affect the operation or execution of the order, judgment or decree from which the appeal is taken, and any matters embraced therein. After the appeal has been perfected, this Court is vested with the exclusive power and jurisdiction over the subject matter of the proceedings, and the authority and control of the lower court with reference thereto are suspended."

---

1. A question involving the jurisdiction of the lower court, even though not raised or decided below, may be considered by us *sua sponte* on appeal. See *Stacy v. Burke,* 259 **Md.** 390, 401.

To like effect, see *Vancherie v. Siperly,* 243 Md. 366, 375.

The order of the trial court striking the conviction of second degree murder and the fifteen year sentence was an order clearly relating to the subject matter involved in the pending appeal. Thus, the only judgments properly before us for review are the second degree murder conviction, upon which a fifteen-year sentence was imposed, and the child abuse conviction, upon which a concurrent ten-year sentence was imposed.[2]

The relevant evidence adduced by the State consisted of the testimony of an assistant state medical examiner, a police officer and the appellant's confession. The evidence of the defense consisted of the testimony of the appellant, his wife, his clergyman, and his probation officer.

Officer Scruggs testified that about 7:15 p.m. on January 9, 1971, he was called to Provident Hospital in Baltimore City to investigate an assault on a child. When he arrived he observed a three year old female child lying on a stretcher, unconscious, and with bruises on both sides of her face. He talked to the appellant at the hospital and was advised by him that he was the child's stepfather and that he had spanked the child to punish her. The officer then placed the appellant under arrest. Thereafter, the appellant was taken to the police station, advised of his *Miranda* rights,[3] and interrogated. At that time he gave a statement which was reduced to writing and signed by him. The signed statement was introduced in evidence without objection. In substance it sets forth that while the appellant's wife and daughter had gone to the store, the appellant had the remainder of the children with him at home. He had fallen asleep in his bedroom and upon awakening observed that his stepdaughter, Lisa Franklin (the deceased), was not present with the other children. He found her in her bedroom by herself crying. When

---

2. Appellant indicated, following reargument in the case, that he wanted us to review the legal sufficiency of the evidence to support the second degree murder conviction in the event we concluded the lower court had no jurisdiction to strike that judgment after the appeal had been entered.

3. *Miranda v. Arizona,* 384 U. S. 436.

he inquired what she was crying about, she would not answer him. He then spanked her on her buttocks with a rubber-bottomed sandal. In spanking her he struck her 8 or 9 times and hard enough to draw blood. The child then told him he had better stop spanking her; whereupon, he grabbed her by both arms, yelled at her, and told her she was not going to tell him to stop spanking her. He then shook her for 5 or 6 minutes, causing her head to go back and forth. When he stopped, she collapsed on the floor. When his wife returned from the store, they took Lisa to the hospital. The statement further set forth that the appellant had not hit Lisa on her head and that before he spanked her she had no bruises or injuries to the side of her face.

Dr. Isidore Mihalakis, Assistant State Medical Examiner, conducted a post-mortem examination of Lisa on January 11. He testified that he had found freshly bruised areas on the back of her head, her forehead, her right eye, her right cheek, and near her mouth. The bruises measuring from $1\frac{1}{2}$ to 2 inches had resulted from the child having been struck or striking something and that they could not have resulted from a violent shaking. He also stated that if the "prominences" (elevated areas) had been caused by a fall, they would have been bruised or abrated (skin sheared off) and he had found neither condition. Both buttocks had extensive bruises up to four inches in length. He also made an examination of the child's brain which showed bruising and hemorrhaging over the right frontal area. There was external evidence of an injury to the right side of the head. He stated that death was due to a subdural hematoma brain injury with massive swelling of the brain caused by a direct injury or blow to the head and not by a fall.

The appellant testified to substantially the same facts as those contained in his statement to the police as heretofore related, except he testified that he had shaken the child *5 or 6 times* rather than for *5 or 6 minutes* as set forth in his previous statement. He explained this inconsistency by saying he was very excited at the time he had

given the statement. He further testified that during the spanking, Lisa's face had scratched the baseboard of the bed and he had moved her body so she would not injure herself. The last time he had shaken her she seemed to become unconscious and her head went all the way back. He further stated that he had observed the personnel at the hospital handle the child strenuously in massaging her heart and otherwise attempting to revive her. He admitted he did have a temper. He further testified that he had spanked Lisa because without any reason for so doing she had a habit of going off to herself on occasions and not playing with his children. He considered her acting in such a manner on this occasion and her statement to him to stop spanking her to be misbehavior. He further stated that while he was shaking her, his fingernail had touched Lisa's face.

The testimony of Nonie Moore showed that she was the wife of the appellant and the mother of Lisa. She testified that the appellant had been a devoted husband and father who had supported his family. She further said that he had been a good churchman, had carried the children to Sunday School regularly, had treated all the children alike, and that prior to this incident he had treated Lisa with love and kindness. Reverend Gilliam testified that he had known the appellant for three years as an active member of his church, that he was one of his Sunday School teachers, and that he had attended services every Sunday. He further stated that he was familiar with the home life of the appellant and that the appellant was a good provider and a good father so far as he knew. Roger Thompson, a parole officer, had had the appellant under his supervision as a parolee because of a previous conviction of robbery. Thompson testified that he had seen him at least once every month during a six-month period, that the appellant had been a model parolee, and that he had never given any cause for reprimand.

At the conclusion of the evidence the appellant made a motion for a judgment of acquittal in both cases. The motions were denied.

## SECOND-DEGREE MURDER

In *Dyson v. State,* 6 Md. App. 453 where the facts were somewhat similar to the instant case, we upheld the conviction of a father of second-degree murder for maliciously inflicting corporal punishment upon his three-year-old daughter. In that case the evidence showed that the child hit her head on the floor while the father was shaking her because she refused to say "grace." She died from the head injury.

In speaking of malice as a necessary ingredient for the crime of murder, this Court said in *Lindsay v. State,* 8 Md. App. 100 at page 104:

> "Malice is 'the intentional doing of a wrongful act to another without legal excuse or justification. * * *' *Chisley v. State,* 202 Md. 87, 105. Malice is the indispensable ingredient of murder; by its presence, homicide is murder; in its absence, homicide is manslaughter. Malice is divided into express and implied malice. Express malice exists whenever an accountable person kills another intentionally unless the killing is justifiable or excusable or unless there is a mitigating circumstance. *Clark and Marshall, Law of Crimes,* 6th Ed., § 10.06, p. 578. But a specific intent to kill is not a requisite of murder. One may commit murder without an actual intent to kill, for the law will imply malice in some unintentional killings and this is called 'implied malice' or 'constructive malice' or 'malice in law.' Two of such classes of unintentional killing, committed without justification or excuse or a mitigating circumstance, in which malice is implied, are where (1) there was an intent to inflict great bodily harm; and (2) conceding that there was no actual intent to injure, an act was done or duty omitted wilfully, the natural tendency of which was to cause death or great bodily harm. *Id.,* at 579-580. So implied malice in

> those classes is a matter of drawing inferences
> from the evidence; upon proof of certain facts,
> malice is inferred. * .* *"

See also *Faulcon v. State*, 211 Md. 249, 257; *Cook v. State*, 9 Md. App. 214, 218. In *Whitehead v. State*, 9 Md. App. 7 at page 9-10 we pointed out that in this State all murder not made murder in the first degree by Md. Code Art. 27, §§ 407-410 inclusive constitutes murder in the second degree. We hold that the evidence in the instant case is legally sufficient to justify the trier of fact in finding as he did that even though the appellant had no actual intent to injure the child, he nevertheless had wilfully inflicted serious multiple injuries upon her which had a natural tendency to cause great bodily harm. Applying the rationale of *Lindsay v. State, supra* to such a finding of fact, the appellant would be deemed to have inflicted the injuries to the child with implied malice in the absence of evidence of justification or excuse.

The appellant contends, however, that he was justified in punishing the child in the manner he did because he stood in "loco parentis" to her. Since he had taken her into his home and was treating her as a member of his family, we will assume for the purposes of this case that he was standing in loco parentis to her at the time of the incident. See 67 C.J.S. Parent And Child § 79; 59 Am.Jur.2d Parent And Child § 88. In affirming the conviction of a person standing in "loco parentis" for assault and battery because of the infliction of excessive corporal punishment upon a two and one-half year old infant, the Court of Appeals speaking through Judge Finan said in *Fabian v. State*, 235 Md. 306 at page 318:

> "The argument that the appellant stood in
> *loco parentis* to the child and that therefore the
> assault was not culpable, even if available under
> the facts of this case, overlooks the fact that the
> punishment which a person standing in *loco
> parentis* may inflict upon the child must not exceed that properly required for disciplinary pur-

poses and must not be excessive or cruel. As stated in 39 Am. Jur., *Parent and Child*, sec. 102, 'A parent or one standing in his place may be criminally liable as for assault and battery if he exceeds or abuses his authority to correct a child and inflicts corporal punishment which exceeds the bounds of due moderation * * *.' Cf. *Palmer v. State*, 223 Md. 341, 164 A. 2d 467 (1960). Slapping a two and one-half year old infant for bedwetting while it was asleep, clearly exceeded the bounds of due moderation and constituted an abuse of authority to correct the child. In addition, malice motivating the slapping was indicated in the testimony * * *. Therefore, even assuming, without deciding, that the appellant stood in *loco parentis* to the child, that relationship would not be a defense under the facts of this case." [4]

Considering the nature and extent of the injuries inflicted upon this child in the light of her alleged misbehavior, if any, we have no difficulty in concluding that the evidence was legally sufficient to warrant the trier of fact in finding as he did that the punishment clearly exceeded the bounds of due moderation and that it was without legal justification or excuse. There was no showing of any mitigating circumstances.

It is well settled that the test of the sufficiency of the evidence in a criminal case is that it must show directly or support a rational inference of the facts to be proved from which the trier of fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. *Williams and McClelland v. State*, 5 Md. App. 450, 459; *Metz v. State*, 9 Md. App. 15, 23. Applying this test to the total evidence in the instant case, we conclude that the trial court was not clearly in error in finding beyond a reasonable doubt that the appellant maliciously inflicted corporal punishment upon the deceased

4. *Certiorari* denied, 379 U. S. 869.

child which directly caused her death and, consequently, that he was guilty of murder in the second degree.

## CHILD ABUSE—MERGER

The question of whether the offense of child abuse for which the appellant was convicted at the time he was found guilty of second degree murder merged into the murder conviction was neither raised in nor decided by the lower court. The question is therefore not before this court for review. *Brown v. State*, 8 Md. App. 462; Maryland Rule 1085.

> *Order dated June 25, 1971 striking judgment of murder in the second degree, and fifteen-year sentence thereon imposed, and entering judgment of conviction of manslaughter, and imposing thereon a ten-year sentence, vacated; judgments of c o n v i c t i o n of murder in the second degree and child abuse affirmed.*