STEPHEN WILLIAM MINOVICH *v.*
STATE OF MARYLAND

[No. 661, September Term, 1972.]

*Decided July 9, 1973.*

The cause was argued before THOMPSON, CARTER and GILBERT, JJ.

*Charles Michael Tobin* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Gerald E. Mitchell, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Stephen William Minovich was indicted for murder in connection with the shooting death of a close friend. After entering pleas of not guilty and insanity at the time of the alleged crime, he was tried before a jury in the Circuit Court for Montgomery County. The jury returned a verdict of murder in the second degree. The questions raised on appeal will be stated separately.

## I Insanity Questions

At trial, Minovich offered medical evidence that he was insane within the meaning of the Maryland statute at the time the crime was committed. There was also medical evidence that he was sane within the meaning of the Maryland law at the time the crime was committed. At the conclusion of his charge the trial judge directed the jury to return one of six possible verdicts: (1) "Not guilty"; (2) "Not guilty by reason of insanity"; (3) "Guilty of murder in the first degree"; (4) "Guilty of murder in the first degree without capital punishment"; (5) "Not guilty of murder in the first degree but guilty of murder in the second degree"; or (6) "Not guilty of murder but guilty of manslaughter." There was no exception to this part of the instructions, but

on appeal Minovich alleges reversible error because the jury failed to render a special verdict on sanity of the defendant at the time of the alleged crime as specifically required by Md. Code, Art. 59, § 25 (b).[1]

Under Md. Rule 756 g an appellant is entitled as a matter of right to assign error in any instructions to which he has

---

1. If the error were jurisdictional, we are required by Md. Rule 1085 to review the question. The question as to whether or not such an error is jurisdictional was settled by *Berman v. Warden*, 232 Md. 642, 193 A. 2d 551, wherein the Court of Appeals of Maryland held that it was not. The history of this question is interesting and we will set it out by quoting *Turner v. State*, 5 Md. App. 584, 588, 248 A. 2d 801:

"In *Price v. State*, 159 Md. 491 (1930), by a four to three decision, the Court of Appeals reversed a judgment on a conviction of murder in the first degree, holding that where a defense of insanity was raised the jury should have rendered a separate verdict on the issue of insanity, by a proper construction of the statute then in effect, Md. Code, (1924), Art. 59, § 6. This statute had been in effect for more than a century with a consistent practice contrary to the holding of the majority. *Berman v. Warden*, 232 Md. 642, 646. Shortly thereafter, in 1931, the General Assembly amended the section to require a preliminary hearing on insanity and by Ch. 81, Acts of the Special Session of 1933, reinstated the former practice. Codified as Art. 59, § 7 the Act provided, among other things, that if a verdict does not contain a finding on insanity, a finding of sanity is conclusively presumed from the verdict of guilty of the crime charged. In *Berman v. Warden, supra,* Berman, who had been convicted in 1928, raised under post conviction procedures the same issue which had been raised in *Price* and relied on that opinion. Denying the application for leave to appeal the Court assumed but did not decide that the statute, construed in *Price* and applicable at the time of Berman's conviction, required a separate verdict on the issue of insanity and that the failure to render such a verdict was not cured by a general verdict of guilty in which a finding of sanity would seem to be implicit. It held, however, that the failure to render such a verdict was '[a]t most * * * a technical error in procedure which did not nullify the judgment of a court of general jurisdiction having complete jurisdiction of the person and subject matter, or render it subject to collateral attack.' It said, at 646:

'We are not aware of any decision of the Supreme Court of the United States, or of any federal court, holding that the rendition of a general verdict or the entry of a judgment under such circumstances is a violation of due process.'

It expressly overruled the holding in *Price* that the error was jurisdictional. Chapter 709, Acts of 1967, repealed former § 7-12 of Art. 59 and enacted new § 7-12 in lieu thereof."

By the Laws of Maryland 1970, Chapter 407, the Maryland legislature extensively revised Art. 59, but re-enacted § 7-12 as § 25 (b) in almost identical language.

particularly excepted at the trial. We are enjoined, however, to notice any plain error in the instructions "material to the rights of the accused even though such error is not objected to." We now consider whether the error was material to the rights of the accused. We held in *Turner v. State, supra,* there was no reversible error where the trial judge in a bench trial reserved the preliminary question as to the sufficiency of the evidence to raise the issue of insanity pursuant to a written plea filed therein and did not at trial render a special verdict under the plea. In that case the evidence presented was insufficient to raise the threshhold question as to sanity. Under those circumstances we found that although the violation of the statute was error, there was, on the record, no prejudice to the rights of the accused and the error was harmless.

In *Tanner v. State,* 9 Md. App. 462, 265 A. 2d 573, *cert. den.* 259 Md. 736, where the trial judge improperly ruled that the appellant had failed to present sufficient evidence to permit the issue to be determined by the jury, we remanded the case for the sole purpose of determination of the question of the appellant's sanity either before a jury or a judge as appellant might elect. We directed that the verdict of guilty should stand unless the trier of the fact found that the appellant was insane at the time of the crime in which event the trial court was directed to vacate the judgment of conviction. The question presented in the instant case is, of course, beyond the questions covered in either *Turner* or *Tanner* but based on their reasoning, unless some prejudice to the appellant's rights are found in the record, there is no reason why the judgment of guilty should not stand.[2]

The record shows that the trial judge read his instructions to the jury and furnished them with a typewritten copy thereof. The instructions were twenty-four pages in length, more than twelve pages of which were devoted to the

2. We have already indicated that trial courts should comply with the statute and direct the jury to render a special verdict on the sanity of the accused at the time of the alleged crime. *Saul v. State,* 6 Md. App. 540, 252 A. 2d 282, affirmed on other grounds, *State v. Saul,* 258 Md. 100, 265 A. 2d 178.

question of the sanity of the appellant at the time of the crime. The instructions included the following:

"The first question with which you are confronted is, therefore, whether the Defendant, at the time of the act charged against him as a crime, was or was not afflicted by mental disorder."

* * *

"I have said that the first question before you is whether or not the Defendant suffered from a mental disorder at the time of the conduct charged.

"If you are satisfied beyond a reasonable doubt that he did not, that is an end of the defense.

"If, however, you find that he was suffering from mental disorder at the time, or if you have a reasonable doubt as to whether he was or not, the second question then arises."

* * *

"It is for you to judge on all the evidence before you whether the Defendant lacked substantial capacity to appreciate the criminality of his behavior when he acted as he did.

"If you find that the Defendant as a result of mental disorder lacked substantial capacity at the time of his conduct to appreciate its criminality, or if you have a reasonable doubt as to whether he lacked such capacity or not, I charge you that it is your duty to return a verdict of not guilty on the ground of insanity, stating in your verdict that you base it on that ground."

* * *

". . . I have had these possible verdicts typed up and your Foreman will be given a copy of them. You shall return only one of them."

* * *

"No. 2 verdict: If you are convinced beyond a

reasonable doubt that he unlawfully killed George Daugherty, but you're not convinced beyond a reasonable doubt that he was sane when he did so, then your verdict will be 'not guilty by reason of insanity.'

"If such a verdict is returned, this Court may commit Mr. Minovich to a mental institution for examination and evaluation to determine whether or not, by reason of mental disorder, the person is a danger to himself or to his own safety, or will be a menace to the safety of the person or property of others."

Additionally, while the trial judge was reviewing each of the six possible verdicts, he instructed the jury specifically it could return one of verdicts (3), (4), (5) or (6) if "you are satisfied beyond a reasonable doubt that he unlawfully killed George Daugherty and also that he was sane at the time he did so."

We indicated in *Saul v. State, supra,* note 2, one of the reasons why trial courts should comply strictly with the statute was so that the record would show that the jury had specifically considered the issue of insanity before making a finding as to guilt or innocence. On the record before us it is apparent to us that the jury did so. Indeed, while the jury was deliberating it sent a question to the trial judge pertaining to the meaning of certain words used in the testimony as to insanity. We hold that on this record, although the trial judge was in error in failing to require a separate verdict as to sanity, no rights of the accused were prejudiced.[3]

After the pretrial ruling that the accused had presented sufficient evidence to present a jury question as to sanity, the court ruled that the burden of proof was on the appellant as to insanity and the State could bring its evidence in by

---

**3.** This holding is consistent with the Maryland rule pertaining to inconsistent verdicts. The decisions of the Maryland Court of Appeals and of this Court were reviewed in *McDuffie v. State,* 12 Md. App. 264, 278 A. 2d 307.

way of rebuttal. The ruling of course was contrary to several decisions of this Court including *Strawderman v. State*, 4 Md. App. 689, 244 A. 2d 888, *Turner v. State, supra*, as well as prior rulings of the Court of Appeals, *Bradford v. State*, 234 Md. 505, 200 A. 2d 150. In accordance with the ruling of the trial court the prosecutor in his opening statement advised the jury that if the appellant produced evidence concerning the insanity of the accused at the time of the offense, the State would, in rebuttal, offer evidence that the accused was sane at the time of the offense. On the second day of trial, the trial judge realized his error and so informed the parties, whereupon the State properly produced, during its case in chief, its evidence concerning sanity of the accused at the time of the offense. It is difficult for us to see how this confusion in the trial court could have in anywise been prejudicial to the appellant. We recently ruled in *Powell v. State*, 16 Md. App. 685, 299 A. 2d 454, that where the State withheld exculpatory evidence and opening statements were made accordingly, the error was corrected when the evidence was produced by the State prior to the conclusion of the trial and the accused had the benefit of that evidence. We think the question in the instant case is governed by the rationale of *Powell.*

## II Sentencing

Citing *Bullock v. Director*, 231 Md. 629, 633, 190 A. 2d 789 and *Duffin v. Warden*, 235 Md. 685, 202 A. 2d 597, Minovich contends the trial judge, purporting to act under Rule 764, revised his sentence after an appeal had been noted in the case and when the trial court was without jurisdiction to do so. Under our view of the case, the action of the trial judge did not amount to a revision of the sentence.

On January 29, 1972, after the jury rendered a verdict of guilty of murder in the second degree "with recommendation for mercy", the trial judge revoked Minovich's bond and placed him in the custody of the sheriff pending a presentence investigation. The docket entry on August 11, 1972, reads:

"... Sentence of the Court that defendant be sentenced for a term of five (5) years Court suspends execution of all but One Hundred Seventy-nine (179) days of sentence, which is to be served in Detention Center — defendant placed on probation for balance of term if it can be demonstrated to Court the following: that defendant will be employed full time — that he continue psychotherapy with progress reports to probation officer; that he abstain from all alcohol except sacramental — that he possess no firearms. At end of confinement it is to be presented to the Court that above conditions have been complied with."

It will be noted that the docket entry is ambiguous as to whether or not the court imposed a five year sentence and suspended the remaining time after the 179 days or simply stated his intention in the future to grant probation if certain terms and conditions could be met at the end of the 179 days. Our reading of the transcript at the sentence hearing tends to support the view that a five year sentence was imposed and the judge expressed an intention after 179 days to suspend the balance at that time if the conditions were met. If the trial judge imposed a five year sentence and simply stated his intention to suspend the sentence after 179 days, the subsequent denial of probation would, of course, not amount to an alteration in sentence and the question presented would be moot. There are several factors, however, which indicate that this would be an erroneous construction of the actions of the trial judge. As we shall demonstrate hereinafter, the trial judge treated the situation as though he granted probation for the remainder of the term at the time sentence was imposed. Secondly, Md. Code, Art. 27, § 705 F, provides that an offender may not be sentenced to a regional detention center if the sentence is more than 18 months. Thirdly, under Md. Rule 764, absent an appeal, the court's power to revise the sentence would expire within 90 days and the court would be without power to accomplish the result he desired. We will, therefore, treat

the case as though probation was granted on August 11, 1972.

The transcript shows that on August 28, 1972, Minovich was interviewed by a probation officer. Minovich filed an appeal to this Court on September 8, 1972. When the trial judge received the probation report, he, purporting to act under Md. Rule 764, *sua sponte* passed an order directing the case be set down for hearing on the first of November for reconsideration of the sentence. At that hearing the court announced it had set the case for hearing because it had received the report of the Probation Department. Stating that he had previously furnished counsel a copy of the report, he directed the court clerk to file the report in the record. The report is not in the record as transmitted to us but that is of no consequence as no issue is presented to us concerning the factual basis for the revocation. At the hearing the judge "revoked probation" in the following language:

> "I have to concur in the comment that has been made this morning: that I am not shown any affirmative response even today. So the conclusion of the court is that I shall revoke the suspension of the execution of the sentence and remand the prisoner to the Department of Correction of Maryland.
>
> "It is my intention to make the psychiatric reports on this prisoner available to the parole board so that they will be fully apprised of the risks that even his own psychiatrists anticipate would be involved if they are undertaking considering a parole.
>
> "I am still of the mind that with a will and a disposition to work out some structured circumstances he could be free in society, but until that can be effectively carried out the Court cannot countenance any further delay. It is my conviction that for whatever resources they may have available in the state institutions, it is time for them to be available to this man.

"Mr. Minovich, all I can say is that the court has been struggling for months to help you to rehabilitate yourself, but I seem to have failed and it is going to be in the hands of somebody else."

The docket entries for November 1, 1972 show:

". . . Court . . . . revokes suspension of execution of sentence and remands defendant to the Department of Correction with credit for time previously served."

Under our construction of the legal effect of the trial judge's rulings the precise question before us is: Can a trial judge revoke probation while an appeal is pending? Under this view we do not reach the question of whether or not he has power to revise a sentence under Maryland Rule 764.

In *Bullock v. Director, supra,* 231 Md. 633, the Court pointed out "[a]n appeal to this Court from a *nisi prius* court does not necessarily stay all further proceedings in the trial court, nor does it strip said court of all power over the proceeding in which the appeal has been taken. The trial court may act with reference to matters not relating to the subject matter of, or affecting, the proceeding; . . ." Many other cases contain similar language. *State v. Jacobs,* 242 Md. 538, 219 A. 2d 836; *Avirett v. State,* 76 Md. 510, 539, 25 A. 987; *Moore v. State,* 15 Md. App. 396, 399, 291 A. 2d 73. The Supreme Court in *Berman v. United States,* 302 U. S. 211, 58 S. Ct. 164, 82 L. Ed. 204 (1938), while holding that an accused could not be resentenced during the pendency of an appeal, stated as follows at 302 U. S. 213, 58 S. Ct. 166: "Placing petitioner upon probation did not affect the finality of the judgment. Probation is concerned with rehabilitation, not with the determination of guilt. It does not secure reconsideration of issues that have been determined or change the judgment that has been rendered." Relying on this language, the Court in *United States v. Lindh,* 148 F. 2d 332, (3rd Cir.) held specifically "while the District Court is without jurisdiction during the pendency of the appeal to modify that judgment it retained and still does retain, despite the pendency of the appeal, the power to modify or

378

suspend or otherwise deal with the terms of the petitioner's probation. Probation is separate and distinct from sentence." We hold an appeal does not preclude a trial judge from revoking probation while the appeal is pending.

*Judgment affirmed.*